JONAS P. MAGNUSSON

*v.*

SWAN P. JOHNSON *et al.*

1. DEED—*whether a mortgage.* Where a sale is, in form, absolute, in order to change its character to that of a mortgage, the evidence must clearly show that it was so intended.

2. Where land is sold under a deed of trust, and the title vested in the purchaser, and a third party, at the request of the original owner, buys from the purchaser, giving his note for the purchase money, and takes a contract, in writing, for the conveyance of the land to him upon payment of his note, and then agrees, verbally, with the original owner, that, if he will pay the note when due, he may have the land, and the original owner makes no promise to pay, and does not in fact pay, and the deed is executed to the purchaser, his title is absolute, and is not held as a security for the payment of the money paid by him.

3. STATUTE OF FRAUDS. In such case, the original owner has but a privilege given to purchase the land by the payment of the note when due, and, being a verbal contract, was void under the Statute of Frauds.

4. SAME—*in what case availing.* Where one, claiming to own land, conveys an interest therein to another, and becomes liable to him for the goodness of the title, and, upon a bill filed against both assailing the title, the grantor sets up the Statute of Frauds, and the grantee does not, and, pending the suit, the grantee reconveys to the grantor, the latter can have the benefit of the statute as to the interest acquired by such reconveyance, as well as to the interest he had before.

APPEAL from the Circuit Court of Henry county; the Hon. GEORGE W. PLEASANTS, Judge, presiding.

This was a bill to redeem, the case made by it being, in substance, as follows: That appellant, Magnusson, being the owner of 172 acres of land in Henry county, subject to a trust deed for $3000 before made by him to one Price, as trustee, executed to one Williams, as trustee for Warren M. Baker, a trust deed on the same land to secure the payment of $664; that Baker assigned the same to one Martin W. Gay; that, for default of payment of the $664, the land was sold under the trust deed to Williams, and purchased by Gay; that appellant did not know of the sale until informed by Baker; that

he then saw Gay, who promised to let him have the land back upon payment of $1250, that sum being made up of the amount due under the trust deed to Williams, and costs, a year's interest on the prior trust deed of $3000 which was resting upon the land, and something additional; that appellant, being unable to make the payment, applied to appellee Johnson and one Charlson to advance the money for appellant, which they agreed to do; and that it was agreed that Johnson and Charlson should take a deed from Gay of the land, for appellant's benefit, and reconvey to appellant upon repayment by him of the amount paid Gay, with interest; that Johnson and Charlson paid the money for appellant to Gay, each paying one-half, and Gay conveyed the land to Johnson and Charlson; that Johnson afterward executed to appellee Abrahamson a deed of the one undivided half of the land, with notice to the latter of appellant's rights; that Abrahamson and Charlson subsequently divided the land, Abrahamson taking the west and Charlson the east half; that there was no difficulty between appellant and Charlson in regard to the east half.

The bill prayed for an account of the rents and profits derived by Johnson and Abrahamson from the land, and that upon payment of what, if anything, might be due to Johnson for the money paid to Gay, Abrahamson should reconvey to appellant.

Johnson answered, denying the principal allegations in the bill, setting up that he and Charlson purchased from Gay, also the Statute of Frauds, and denying notice to Abrahamson. The latter answered substantially as Johnson did, but not setting up the Statute of Frauds.

Appellant, before the hearing, by leave of the court, amended his bill, stating that, since the taking of the depositions, Abrahamson had reconveyed the west half of the land to Johnson, and that Abrahamson had then no interest in the land.

Upon hearing on pleadings and proofs, the court below dismissed the bill, and the complainant appealed.

Mr. WILLIAM DAVIS, for the appellant.

Mr. A. R. MOCK, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The question here presented is, whether there was a loan to, or advance of money for, appellant, and the conveyance from Gay to Johnson and Charlson was but a security for the repayment of the money by appellant; or, whether there was a purchase of the land by Johnson and Charlson from Gay, with the privilege given to appellant to acquire the land by paying the purchase price by a certain day. The whole testimony in regard to the transaction is confined to that of appellant, Johnson and Charlson.

The testimony of appellant would doubtless make it a loan, or advance, and security, and that of Johnson and Charlson the reverse.

There was no loan or advance of money at the time, but Johnson and Charlson gave their promissory note to Gay, payable in nine months—the 18th of December, 1872—and the latter gave a contract to Johnson and Charlson to convey to them on payment of the note, and Johnson and Charlson verbally promised appellant that, if he would pay the note to Gay, he should have the land. Appellant failed to pay the note, and Johnson and Charlson paid it at maturity, and received the conveyance in accordance with Gay's contract. In February or first of March following, there was an interview between appellant, Johnson and Charlson, when the two latter gave appellant further time to pay for the land—Johnson until August 1, 1873, Charlson until September 1, 1873. Johnson testifies he gave that time, unless he sold the land before. March 29, 1873, he sold and conveyed it to Abrahamson.

Without going into the details of the testimony, it is a fair conclusion, from it, that Johnson and Charlson refused to sign the note with appellant, and would only give their own note and take a contract from Gay to convey to them on payment of the note when due, promising appellant he should have the land if he would pay the note, with an explicit understanding that, unless he did pay the note, the land should be Johnson's and Charlson's absolutely, and appellant have no claim to it. If such was

the real arrangement, then there was but a privilege given to appellant to purchase the land by making the payment named by a day certain. There was nothing in the relation of the parties to forbid the making of such an arrangement. Appellant had no interest whatever in the land. He had become divested of it by the sale to Gay under the deed of trust. He assumed no liability to any one to pay any money, and was under no such obligation. It is true that it was at his instance, and doubtless to benefit him, that Johnson and Charlson entered into the transaction; but that would not preclude the making of the arrangement they did. Discrepancy of price is sometimes a consideration in determining the character of such a transaction, and it is urged here by appellant. He testifies the land to be worth $40 per acre; Charlson, $28 or $30. The $1250, with the $3000 incumbrance, would make the purchase price some $4250—some $900 less than the value Charlson puts upon the land. As Gay was more than making himself whole, he might well be willing to take that much less than the estimated value of the land, in order to realize his money out of it, and nothing appears but that he was willing to take the price he received, from any one who would pay it, and, as the land did not pass from appellant to Johnson and Charlson, we do not see how the price is to weigh here.

This court has repeatedly said that, when a sale is, in form, absolute, in order to change its character to that of a mortgage, the evidence must clearly show that it was so intended. *Dwen, Exr.* v. *Blake,* 44 Ill. 136; *Price* v. *Karnes,* 59 id. 277; *Remington* v. *Campbell,* 60 id. 516.

There is here a failure of such proof. The transaction, then, between the parties, not being found to be a security for any loan or advance of money, there was but a privilege given to appellant to acquire the land by paying the note for $1250, due December 18, 1872, which Johnson and Charlson gave to Gay for the land, appellant, on his part, making no agreement for its payment. Apart from the objection of appellant never making any payment, and want of consideration; the promise was but a verbal one, and void by the Statute of Frauds.

160        MAGNUSSON v. JOHNSON *et al.*        [Sept. T.

Opinion of the Court.

*Perry* v. *McHenry*, 13 Ill. 227; *Stephenson* v. *Thompson*, id. 186; *Reeve* v. *Strawn*, 14 id. 94; *Holmes* v. *Holmes*, 44 id. 168; *Botsford* v. *Burr*, 2 Johns. Ch. 404; *Taintor* v. *Keyes*, 43 Ill. 332; *Ranstead* v. *Otis*, 52 id. 60.

But it is objected that Abrahamson did not set up the Statute of Frauds in his answer, and, as he then held the land, his subsequent transfer of it to Johnson, pending the suit, carried it to the latter with the benefit of only such a defense as Abrahamson had interposed, and that Johnson, after the transfer, claiming under Abrahamson, is not entitled to rely upon the Statute of Frauds, as Abrahamson himself had not set it up.

Johnson, in his answer filed at the same time with that of Abrahamson, sets up the Statute of Frauds. At that time, Johnson was the grantor of Abrahamson. Appellant introduced in evidence the declarations of Abrahamson to the effect that Johnson was responsible to him for the goodness of his title. If so, as may be gathered from the evidence, then Johnson, at that time, was entitled to rely upon the Statute of Frauds in defense against appellant's claim, although Abrahamson had failed to set it up, and to rely upon it, not only as a defense in part, so far as respected himself, but as against the entire bill, and appellant's whole claim to the land, in order to the protection of Johnson against a failure of title in Abrahamson; and it is not perceived how a transfer, afterward, of the land, by Abrahamson to Johnson, should take away, or prevent reliance upon, any defense which Johnson before had in.

The subsequent promise made in February or March, 1873, to give further time for payment, of course has no more force than the original promise, and adds nothing to it.

We are of opinion the court below properly dismissed the bill, and the decree will be affirmed.

*Decree affirmed.*