## JONAS P. MAGNUSSON
### v.
### JOHN A. CHARLESON ET AL.

1.. STIPULATION—CONSTRUCTION.—Appellant filed a bill against appel-
lees to have a certain deed declared an equitable mortgage, for leave to re-
deem, etc. Appellees answered, setting up full title in themselves and deny-
ing appellant's equitable title. Pending the suit, the cause was referred to a
master, by stipulation of parties, stipulating that an account should be taken
of all matters of difference, "except the title to the land in question," and
that on confirmation of the report a decree be entered that complainant pay
the amount found due, if any, and upon such payment, appellees convey said.
land to complainant. It was further stipulated that the question whether
the trasaction amounted to an equitable mortgage should not be submitted
to the master or considered by the court in passing upon the master's report.
*Held*, that the stipulation must be construed with reference to the case made
by the bill of complaint, and that by the stipulation appellees yielded to the
claim of title as made out by appellant, and they should be treated as mort-
gagees in possession.

2. MORTGAGEE IN POSSESSION—ACCOUNT FOR PROFITS.—A mortgagee in
possession is required to account for actual receipts, less such sums as he may
have paid out for taxes and necessary repairs, unless the evidence shows that
by reasonable diligence more could have been realized.

ERROR to the Circuit Court of Bureau county; the Hon.
EDWIN S. LELAND, Judge, presiding. Opinion filed November
2, 1881.

Messrs. DAVIS, THOMPSON & McGAAN, for plaintiff in error;
that the time limited for the payment of the sum found due
from plaintiff in error was too short, cited Bush v. Connelly,
33 Ill. 447; Moore v. Titman, 33 Ill. 358; Farrell v. Parlier, 50
Ill. 274; Moore v. Bracken, 27 Ill. 23; Claycomb v. Cecil, 27
Ill. 497; Cronan v. Frizell, 42 Ill. 319; Cholmley v. Countess
of Oxford, 2 Atk. 267; Bishop of Winchester v. Paine, 11 Ves.
199; Dunham v. Jackson, 6 Wend. 22; Waller v. Harris, 7
Paige, 173; 1 Daniell's Ch. Pr. 1016.

A mortgagee in possession must account for what he receives,
less his proper charges: Coote on Mortgages, 345; 1 Hilliard
on Mortgages, 450; Hollabush v. Burr, 17 Conn. 556; 4 Kent's

Com. 185; 3 Powell on Mortgages, 1154; Robertson v. Campbell, 2 Call. 354; Ballinger v. Moreley, 1 Bibb, 195; Davenport v. Tarleton, 1 Marsh, 244; Ross v. Norwell, 1 Wash. 14; Roberts v. Fleming, 53 Ill. 196; Harper v. Ely, 70 Ill. 581: Mansfield v. Elwood, 84 Ill. 497; Clark v. Finlan, 90 Ill. 249; Moshier v. Norton, 83 Ill. 519.

A mortgagee in possession is a trustee or steward for the mortgagor: 1 Hilliard on Mortgages, 448; French v. Barton, 2 Atk. 120; Moore v. Cable, 1 Johns. Ch. 384; Eaton v. Simons, 14 Pick. 98; Scott v. Brut, 2 T. R. 238.

A mortgagee will not be allowed for improvements beyond necessary repairs: Russell v. Blake, 2 Pick. 505; Sandon v. Hooper, 6 Beav. 246; Bellows v. The Mayor, 10 Paige, 49; Quinn v. Brittain, Hoffman 344; Moore v. Cable, 1 J. C. R. 385; Benedict v. Gilman, 4 Paige, 58.

As to the rule for construction of the stipulation: Parmelee v. Hambleton, 24 Ill. 605; Gale v. Dean, 20 Ill. 320; Crabtree v. Hagenbaugh, 25 Ill. 233; Peckham v. Haddock, 36 Ill. 39.

The court will carry the stipulation into effect: Toupin v. Gargnier, 12 Ill. 79; Chapman v. Shuttuck, 3 Gilm. 49; Henchey v. Chicago, 41 Ill. 136; Coultas v. Green, 43 Ill. 277.

Impeaching testimony must be taken after the witness to be impeached has testified, and must be from among his neighbors : 1 Greenlf's Ev, § 461; Frye v. Bank of Illinois, 11 Ill. 367; Eason v. Chapman, 21 Ill. 33; Crabtree v. Kile, 21 Ill. 180.

Messrs. SHEPARD & MARSTON, for defendants in error ; that a resulting trust can only arise in favor of one who claims to have furnished the consideration money, when such money was furnished as a part of the original transaction at the time the purchase was made, cited Perry v. McHenry, 13 Ill. 227; Sheldon v. Harding, 44 Ill. 68; Holmes v. Holmes, 44 Ill. 168; Reeve v. Strawn, 14 Ill. 98.

The presumption is that the recitals in the decree were supported by proper evidence: Durham v. Mulkey, 59 Ill. 91; Corbus v. Teed, 69 Ill. 205; Jones v. Neeley, 72 Ill. 449.

LACEY, J.   The plaintiff in error filed a bill in the Henry County circuit court to compel an accounting between himself and defendant in error, John A. Charleson. The scope and object of the bill was to have the court declare the title by which the defendant in error, Charleson, held 86 acres of land in Henry county, being the east half of 172 acre tract described in the bill, an equitable mortgage, with a prayer for leave to redeem, and to restrain Charleson from prosecuting a forcible entry and detainer suit to recover the east 86 acre tract, and from selling personal property under two executions in favor of Charleson. It is charged in the bill in substance that plaintiff in error was the owner in fee of the 172 acres described, subject to a trust deed of $3,000, before executed to one Price, as trustee for Howland; that he executed another trust deed to Williams, trustee for Warren M. Baker, on the same land to secure the payment of $664, due in 9 months; that Baker assigned the same to Martin W. Gay. The date of the last deed was Feb. 1, 1871. Default was made in the payment of this last sum, and the land was sold to Gay for debt, interest and costs. That appellant, hearing of the sale, saw Gay, who offered to re-convey to plaintiff in error for the sum of $1,250. That plaintiff applied to defendants in error, Johnson and Charleson, to assist him to pay Gay. They agreed to do so, but refused to take from plaintiff in error a mortgage, because of the prior incumbrance, and it was arranged that instead of plaintiff in error taking a deed from Gay and giving Johnson and Charleson a mortgage, they should take a deed in their names for the benefit of plaintiff in error. That each was to pay an equal amount of the money to Gay, and upon being repaid by plaintiff in error, they were to convey the land to him. That Johnson and Charleson did pay Gay the amount, and took from him a deed. That afterwards Johnson and Charleson refused to carry out the arrangements; that Johnson had conveyed the west 86 acres to one Abrahamson, who claimed the land and refused to convey. The bill sets out the various transactions and dealings between the plaintiff in error and Johnson and Charleson under the said contract, not necessary to fully detail. It is enough to say that the deed from

Gay to Johnson and Charleson was made on the 18th day of March, 1872. During the year 1872 the plaintiff held possession of the land and farmed it as tenant of Johnson and Charleson; the rent, however, received by the latter of plaintiff in error, paid for the land, was to go in discharge of the money paid to Gay. The plaintiff in error prays that an account be taken of the amount due, if any, from plaintiff in error to Charleson, in respect to the amount paid Gay, and other sums paid by Charleson for plaintiff; an account of the amounts received by Charleson in respect of the crops, and other particulars, and what, if anything, is due from plaintiff in error on the security of the land, and upon payment by plaintiff in error, Charleson to re-convey the east half to him, and if Charleson is indebted to plaintiff in error, he be ordered to pay.

This bill proceeds upon the theory that the transaction between Johnson and Charleson, and plaintiff in error and Gay, made the sum paid to Gay a loan from Johnson and Charlson, and that the deed was an equitable mortgage. Charleson answered the bill denying that it was a loan, but that the deed taken by them from Gay was a purchase, and they only gave plaintiff in error a privilege to buy the land by paying Gay the amount they gave for the land or their notes, and if he did not do so then the land was to be deeded to them by Gay, and it was to be absolutely theirs, and that plaintiff in error having failed to do as agreed, the land was theirs and the deed was not a mortgage. He also set up the Statute of Frauds as to any verbal agreement to sell the land to plaintiff in error, or to allow him to buy it.

While the case was thus at issue, to wit: on the 31st day of August, A. D. 1874, the plaintiff in error and defendant in error, Charleson entered into and filed in the cause a stipulation in substance as follows: " It is hereby stipulated and agreed by and between the parties to the above entitled cause, that an order of reference be entered upon the records of said court to J. S. Hinman, Master in Chancery of the Henry Circuit Court, to take account as to all matters in difference (except the title to the land in question) between the parties, and

ascertain what, if anything, is due from complainant to defendant Charleson, and that on confirmation of the report of said master, a decree be entered requiring complainant to pay the amount found to be due, on a day named by the court, and in default of such payment that complainant's bill be dismissed, and complainant be forever barred from attempting to assert any right, title or interest in and to the land described in said bill, and in question in said cause, and that on the payment on the day named in said decree, said Charleson convey said land to complainant. It is further stipulated and agreed, that the question as to whether the transaction mentioned in said bill amounts to or was a mortgage or not, shall not be submitted to said master, and no evidence on that question be taken by him, and that question shall not be considered by the court in passing upon the report of said master, or in making said decree, and the question of damages on the dissolution of the injunction in said cause, and the question of costs be determined by the court after confirmation of said master's report, and in case it shall appear that Charleson is indebted to said complainant, a decree shall be entered requiring him to pay the amount on a day named by the court in said decree.

"Signed JOHN A. CHARLESON.

"JOHN P. MAGNUSSON."

At the time the above stipulation was made, the old suit of plaintiff in error against Johnson, being a bill to redeem the west half of same tract of land similar to this one, was pending in the Supreme Court. On the 30th January, 1875, the Supreme Court decided the case against plaintiff in error, and he lost the 86 acre tract. The deed from Gay was decided not to be an equitable mortgage. But there was no stipulation like the above, in that case. All the facts and the decision of the court in that case, will be seen by reference to Magnusson v. Johnson et al. 73 Ill. 156.

There was a motion made by appellee, Charleson, to dismiss the writ of error in this case, for the want of jurisdiction of this court, on the ground that a freehold is involved.

This motion was taken by the court to be decided on the

hearing.   It will be seen by reference to the above agreement, that no freehold is involved.   The land is to be conveyed to plaintiff in error at all events.   If anything is found due to defendant in error, Charleson, the conveyance is to be made upon payment of the same to him by plaintiff in error, on a day to be fixed by the court.   If nothing is found due defendant in error, he should then make the conveyance upon such finding by the court, and if defendant is found to owe plaintiff in error, then the conveyance should also be made, as well as a decree over in plaintiff in error's favor for such amount. The substance of the agreement is also that the title of defendant in error is only an equity of redemption, nothing being involved according to the issues in the case and agreement of parties, but the amount of money due from plaintiff in error to defendant in error, or the reverse.   It is the same as any other foreclosure.

It is contended on the part of the counsel for defendants in error, that the effect of the stipulation is not to admit that he only held in the land an equity of redemption, and that his deed is an equitable mortgage.   We think that such was the intention and such was the effect of the stipulation.   By the stipulation, the question of title, or whether the transaction mentioned in the bill was a mortgage or not, was not to be submitted to the master, or considered by the court in passing on the master's report, or in making the decree.

Only questions of account were to be considered by the master and court.   Yet upon the settlement by the court of the account, defendant in error was to convey the land to the plaintiff in error.   The bill set up in substance that the defendant held the title to the land as a security for money advanced by him, and that plaintiff in error was entitled to redeem by paying and settling certain specified amounts, among which was the money advanced for the land which it was claimed was advanced for plaintiff in error, and certain rents and profits arising from the land were charged in the bill against defendant in error as mortgagee in possession.   All these, together with items claimed by defendant, were to be adjusted.

We must hold  that the agreement was made with reference

to the case made in the bill, and all accounts were to be ad-justed upon the same theory. That defendant in error yielded to the claim of title as made out by plaintiff in error. We can not yield to the suggestion that the agreement by implication confirmed the title in defendant in error from its inception, and that plaintiff yielded up all his claim made in the bill, and that all defendant had received by way of income arising from the land should be considered his on the ground that the land had been his all the time. The original purchase and, interest, taxes, money paid on prior mortgage and interest, difference between price of west and east half paid Johnson, and interest, and all other claims against plaintiff in error, are charges in defendant's account.

This could not be consistently done unless the land was that of plaintiff in error. The court below treated the stipulation as admitting the right of title in plaintiff in error, and in treating the defendant in error as a mortgagee in possession. Upon this, which we think was the proper basis, the court below attempted to settle and adjust the accounts between the parties as far as it pertained to the settlement of rents and profits.

The cause was referred to the master under the stipulation, who made his report, which was accepted by the plaintiff in error; the court heard the cause on exceptions to master's report on the 13th day Dec., 1875, and made an interlocutory decree, finding the plaintiff in error indebted to defendant in error, Charleson, in the sum of $924,17, and decreeing payment on or before the 1st day of January, 1876. The plaintiff in error having failed to pay the sum of money within the time fixed, final decree was passed by the court Jan. 5, 1876, dismissing the bill at costs of plaintiff in error. It is assigned for cause of error, that time enough was not given by the court in which to pay the money. It will not be necessary to decide this question, as the decree will have to be reversed for other reasons.

By the 13th assignment of error, it is claimed the court erred in not charging defendant in error with the proper amount chargeable to him in respect of the crops of 1872 and 1874.

Magnusson v. Charleson.

In regard to the crops of 1872, it appears that plaintiff in error rented the land of defendant in error, Charleson and Johnson, except a portion or all of the west half, which was rented to Oelson, and plaintiff in error and Oelson were to pay one-third as rent, which was to be applied in liquidation of moneys advanced by Charleson and Johnson for the purchase of the land and other claims. It appears a large portion of the crops of that year consisted of broom corn raised by plaintiff in error, and a portion by Oelson; and that plaintiff in error advanced large sums of money in harvesting and taking care of it, and took the entire crop into his possession, as well as some broom corn raised in Bureau county by plaintiff in error. It is claimed that the broom corn was not sold for as much as it should have been, and that in weighing it to Lee, the purchaser, there was a mistake made in calculating the weights of about one-half ton. It appears that the broom corn was sold in the early spring of 1873 at $40 per ton, when it was not worth more than that price, but that at the time of delivery about middle of June of the same year it was worth much more. The court only charged defendant in error, Charleson, the amount he actually received. Under the evidence we cannot say that this was error. We cannot say that he was not bound under the contract to deliver the corn, or that there was any want of reasonable diligence on his part in getting all he could for the broom corn. It appears also that he did not receive anything for the 1,020 pounds, supposed error, from Lee, although he brought suit for it. We have no fault to find with the action of the court in adjusting the account for the year A. D. 1872.

For the year 1873, defendant in error, Charleson, received nothing for the rent. The plaintiff, who had control of the land, did not pay any rent, as he had agreed, and nothing is to be adjusted for that year.

In the latter part of May, A. D. 1874, after plaintiff in error had prepared all the ground for planting, and had planted a portion of the land in corn, and some oats and wheat on a portion, leaving 20 acres plowed for broom corn, the defendant in error, Charleson, took possession of the land in the latter part

of May, when all this work had been done, and afterwards planted the 20 acres in corn. This crop was cultivated, harvested, and sold by defendant in error, Charleson, out of which he realized in gross about the sum of $1,578.74, the entire expense being $336.36, leaving a balance in favor of plaintiff in error of $1,242.38, out of which some other small charges may possibly be taken.

This amount was what was actually received by defendant in error, Charleson, according to his own evidence.

The rule in reference to a mortgagee in possession is that he is required to account for actual receipts, less such sums as he may have paid out for taxes and necessary repairs, unless the evidence shows that by reasonable diligence more could have been realized. Mason v. Norton et al. 83 Ills. 519; Clark v. Finlon, 90 Ills. 245. Instead of following the rule in such cases, the court allowed plaintiff in error the sum of four dollars per acre rent for the land, being $344, and interest on that sum. This makes an error against plaintiff in error of about $898.33. In adjusting these sums interest at legal rates should be allowed on the sums advanced for expenses, taxes, etc. from the time advanced, and on the net amount of rents and profits from the time realized. The court erred in not allowing plaintiff in error against defendant in error, Charleson, the amount the latter actually received for the year 1874, less expenses, taxes and necessary repairs, instead of rent at four dollars per acre for the land. There is no error assigned as to the mode adopted by the court in computing interest.

The 8th and 10th assignments of error question the action of the court in allowing to defendant, Charleson, a note of $200, with ten per cent. interest given to Abrahamson by Charleson, for difference between the east and west half of the 172 acres of land, and also in allowing to defendant, Charleson, an excess of $20 per year interest, paid more than his share of the Price mortgage, the principal of which was $3,000; $150 being ten per cent. on one-half the mortgage is all that should have been allowed, it is claimed.

It appears to us that there was a mistake in adjusting this matter of interest between Charleson and Abrahamson, to the

extent of $20 yearly. If the difference in value between the two tracks had been settled by Charleson giving his note for the difference, then each one should be burthened with the payment of one half the principal and interest of the Price mortgage. In case the east half had been worth $400 more than the west half, and Charleson had deeded to Abrahamson land off the east half worth $200, then the two would have had land of equal value, and should have been equally burthened with the payment of the prior incumbrance.

The fact that a note was given for $200 instead of deeding the land can make no difference in principle. The note drew ten per cent. interest and would off-set the interest on that much of the incumbrance, and a cash payment would make their interest equal. To make Charleson pay $1700 and Abrahamson $1300, of the incumbrance, would under the circumstances be making Charleson settle the difference twice between the value of the two pieces of land on the basis of a difference of $400. But as the incumbrance covered every part of the land, we think that Charleson would have had the right, being a junior mortgagee, to pay it all, in which case he would become subrogated to the rights of the prior mortgagee, and could compel contribution from Johnson, or his grantee, Abrahamson, to the extent that the west half would be equitably bound to contribute, and that matter could be adjusted at any time between the owners of the east and west halves.

Plaintiff in error if he succeeded to the rights of Charleson in the east half of the land, and paid more than his proportionate share of the Price mortgage, could adjust that matter with Abrahamson on final settlement of the prior mortgage. As that mortgage has never been fully settled we see no error in allowing all that Charleson has paid on it, even if that be more than his proportionate share. If Charleson and Abrahamson had fully settled and taken up the Price mortgage, the case might be different.

It is also claimed by counsel for plaintiff in error, that he should not be charged with the two hundred dollar note, of date March 29, 1873, given by defendant in error, Charleson, to Abrahamson, on partition of the land, for the difference in

value between the east and west half, the former of which, Charleson took and Abrahamson the latter. It is claimed that as defendant in error, Charleson, was only mortgagee in possession, he could not make a contract of partition between him and Abrahamson that would be binding upon plaintiff in error, who is the mortgagor and has the equity of redemption. If the law was as claimed, we still think that the plaintiff in error would be bound by the terms of the partition on the grounds of satisfaction. The exchange of the deeds of partition between Charleson and Abrahamson, and the giving the note was all a part of the same transaction and the note was given in consideration of the difference in value of the two tracts of land.

Plaintiff in error, by his suit against Johnson and Abrahamson, procured the title in the west half to be confirmed in Abrahamson, and secured to himself the east half. In this suit he claims the east half in accordance with the partition. By such action we hold that he has ratified the partition as made, and having done so and received the benefits of it, he must pay or allow to Charleson the amount he paid in consideration of it.

The 9th assignment of error is that the court allowed $45 to defendant in error, Charleson, for repairs on house and building stable. This was the amount charged by defendant in error, Charleson, for necessary, repairs and we think from the evidence *prima facie* the bill should be allowed. It does not necessarily follow that building the stable was not a necessary repair. A temporary stable on a farm we think might, under proper circumstances, be regarded as necessary repairs.

The 11th assignment of error we do not regard as well taken.

It is complained that defendant was not charged with $53, for a promissory note on one Rosier, which was left by plaintiff in error with defendant as collateral security, and which the latter could not collect on account of the insolvency of the maker. The evidence does not show that the note could ever have been collected, or any want of diligence on part of defendant in error. The defendant in error was not bound to

surrender the note to plaintiff in error because the latter told him he could trade it off for face and interest. He had a right to collect it himself, and apply it as was agreed on the debts of plaintiff in error.

We find no error in the 12th assignment in regard to the court below not allowing certain supposed profits to plaintiff in error, accruing from running a broom-corn press.

If there was any error in the court's action in regard to the press, we think it was not committed against the plaintiff in error.

The plaintiff in error has been allowed $26 for the press without investing any money. This was the difference between price paid by Charleson and the actual value of press as fixed by the court. It is claimed Charleson purchased the press for plaintiff in error, and advanced the money—in other words, loaned it to him. Charleson claims to have purchased the press for himself. We find no error that plaintiff can complain of in the action of the court.

We find no other error in the record that we deem it necessary to notice. For the reasons above given the decree of the court below is reversed and the cause remanded.

Reversed and remanded.