## Frank Kerting v. I. G. Hatcher.

### Gen. No. 11,480.

1. CONTRACT—*when, cannot be added to by parol.* Where the parties to a transaction have fixed their respective rights by a written contract, in the absence of fraud or mistake, one of them is not permitted to claim that such contract expressed or evidenced a part only of the

agreement so made by them in relation to the subject-matter of such contract.

2. MORTGAGE—*what essential to.* There can be no mortgage without an indebtedness to support it.

Bill for accounting. Appeal from the Circuit Court of Cook County; the Hon. ABNER SMITH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1903. Affirmed. Opinion filed January 20, 1905.

LEON HORNSTEIN, for appellant.

RANDALL W. BURNS, for appellee.

MR. PRESIDING JUSTICE BAKER delivered the opinion of the court.

The Kerting Lithographing Co. made an assignment for the benefit of creditors May 30, 1890. In July, 1890, the plant of the company was sold by order of the County Court to Gage, who operated the plant until October 31, 1890, when he sold and transferred it to Hatcher. After the purchase had been agreed upon, and before it was consummated, Hatcher entered into a written contract with Kerting, which provides that the purchase of said plant by Hatcher shall be " upon the express understanding that the title to said plant, free from all debts and liabilities of every kind, shall be vested absolutely with possession in Hatcher." The contract then provides:

" That upon the complete and satisfactory consummation of said purchase by said broker of said plant for and in behalf of said Hatcher as aforesaid, the said Hatcher then and thereupon further agrees to and with said Kerting to grant, bargain, sell and deliver to said Kerting said plant on or before December 4, 1890, upon the payment by said Kerting to said Hatcher of the sum of fifty-five hundred dollars and no more, unless other sums of money shall have been laid out and expended in the protection of said Hatcher's title to said plant, or in the proper conduct and management of said lithographing business, and then only such sum or sums of money actually and necessarily expended, taking into account as a just credit such sum or sums of money actually received in the course of said business, the said Hatcher being understood hereby as being in possession, by himself

or agent, of said plant, as well as the absolute owner thereof, and as hereby giving or intending to give said Kerting an option until December 4, 1890, to purchase said plant upon the terms and with the sum or sums of money aforesaid. \* \* \*

"Said Kerting hereby further agrees to and with said Hatcher to devote his time and best energies for the advancement of the business incident to the use and profitable possession of said lithographing plant, in connection with said Hatcher or his authorized agent, from the date thereof until December 4, 1890, or until such incorporation is fully organized and ready to do business, and accept in full pay and satisfaction for his services in the premises, twenty dollars a week, it being expressly understood that this undertaking and arrangement is made by said Kerting with said Hatcher in order to induce said Hatcher to purchase of said Gage said lithographing plant, and to secure such time and terms aforesaid unto himself in the matter of repurchasing the said plant of said Hatcher as hereinabove set forth; hereby endeavoring to assure said Hatcher against any possible loss in the purchase of said plant by him of said Gage, under the arrangement and in the manner aforesaid. Should said Hatcher elect to accept from said Kerting the fifty-five hundred dollars advanced as aforesaid, in the purchase of said plant, he, the said Hatcher, shall receive payment *pro rata* for all unfinished work on account of material and labor furnished by him for the same."

December 5, 1890, Hatcher, at the request of Kerting, sold the plant to Hilton for $5,500. The bill of sale from Hatcher to Hilton enumerates a large number of articles, including "all finished stock work, all unfinished order work prorated," and states that

"Said I. G. Hatcher assumes all accounts and liabilities and collects all bills due or payable by him; meaning to include the entire lithographing plant recently sold by F. N. Gage & Co. to said I. G. Hatcher, in rear of Nos. 51 to 55 Dearborn street, Chicago, Illinois.

"To have and to hold the said goods, chattels and property unto the said party of the second part, his heirs, executors, administrators and assigns, to and for his own proper use and behoof forever unless redeemed by said Frank Kerting on or before March 4, 1891."

Kerting was a subscribing witness to the foregoing bill of sale. It was agreed that Hatcher should receive $230 as the estimated value of work done and material furnished by him on the unfinished work transferred to Hilton, and that amount was paid to Hatcher in addition to the purchase price of $5,500.

January 5, 1899, Kerting filed a bill in equity against Hatcher in the Circuit Court, and November 16, 1899, an amended bill. March 2, 1900, he filed an amendment to his amended bill. The amended bill as amended sets out the facts above stated and sets out in full the contract between Hatcher and Kerting and the bill of sale from Hatcher to Hilton. It further alleges that Kerting owned four-fifths of the stock of the lithographing company; that at the time of the assignment there was on the premises where the business was conducted a large amount of finished stock work and other goods worth $2,000, the property of Kerting, which was not included in the assignment. It alleges that the property bought by Hatcher was bought in trust for Kerting and that the purchase was to operate the same as a mortgage for the amount paid by Hatcher; that Kerting was entitled to receive whatever profits arose from the business while it was conducted by Hatcher; that stock work which was the private property of Kerting was included in the transfer to Hatcher, and when the plant was sold to Hilton the same was included and mingled with property coming through the assignee's sale and was partly used and the proceeds received by Hatcher. The bill further alleges that a part only of the agreement made between Hatcher and Hilton October 31, 1890, was evidenced by the written agreement then made. The amendment to the amended bill alleges that the transfer by Hatcher to Hilton was in trust for Kerting, and that Kerting brought a suit at law against Hatcher to make him account for the profits and other sums realized, which suit was dismissed November 18, 1898.

The prayer of the bill was that Hatcher may in his answer set out an account of all moneys received and paid

out by him in respect to the transaction aforesaid; that an account may be taken of said moneys, etc.

The Circuit Court sustained a demurrer to the amended bill as amended and dismissed the same for want of equity and the complainant appealed.

The rights of the parties depend upon the written instrument executed by them October 31, 1890. There is no charge of fraud or mistake and the appellant cannot be permitted to aver that the instrument then executed by him and appellee expressed or evidenced a part only of the agreement then made by them in relation to the subject-matter of the written instrument. The written instrument does not give appellant any right to the profits of the business carried on by appellee from October 31 to December 4, 1890. It declared that the title to the property bought by appellee from Gage should be vested absolutely in appellee. It provided that appellant should devote his time and best energies to the business and should accept $20 per week in full pay and satisfaction for his services in the premises. It gave him an option to buy the plant from appellee at any time until December 4, 1890, and a right to his wages at $20 per week for the time he worked for Hatcher, and it gave him nothing more. He did not agree to buy the plant nor to repay to Hatcher the amount Hatcher paid for it. No debt from Kerting to Hatcher was created by or grew out of the transaction between them and there can be no mortgage without an indebtedness to support it. Burgett v. Osborne, 172 Ill. 227; Kerting v. Hilton, 152 Ill. 658. The case last cited was an appeal from a decree dismissing, for want of equity, a bill filed by the appellant in this case to have declared a mortgage, a contract between himself and Hilton which gave appellant an option to buy from Hilton the plant that was transferred to Hilton by the bill of sale set forth in the bill in this case. The provisions of the contract in that case were, in many particulars, similar to the provisions of the contract between Kerting and Hatcher, upon which this bill is based. In the opinion in that case Mr. Chief Justice Wilkin said

(p. 663): "Where an interest of either party in the property is expressed in a written instrument, it will be presumed that the actual and entire interest is expressed, and oral testimony will not be received to vary the terms of the instrument, there being no fraud shown. There was no debt of appellant to appellee, and there can be no mortgage without an indebtedness to support it. Eames v. Hardin, 111 Ill. 634; Rue v. Dole, 107 Ill. 275."

As to the finished stock, etc., which the bill avers was the property of appellant and was received by appellee, it is sufficient to say that we think it appears from the averments of the bill that such stock was, with the knowledge and consent of appellee, included by Gage as a part of the plant sold by Gage to appellee. If so, the interest of appellant therein is fixed by the terms of his written contract with appellee in relation to the plant so purchased. If any property of appellant was received and disposed of by appellee, which was not by the parties treated as a part of the plant purchased by appellee from Gage and made the subject of the written contract between them, there is no reason why appellant should ask the aid of a court of equity to recover from appellee the price or value of such property.

Appellant does not in his amended bill, as amended, state facts which entitle him to the relief prayed, and the order and decree sustaining a demurrer thereto and dismissing the same for want of equity will be affirmed.

*Affirmed.*