## Oscar D. F. Conkey

*v.*

## Lewis B. Rex.

*Opinion filed October 24, 1904—Rehearing denied December 7, 1904.*

1. REDEMPTION—*when a party cannot maintain bill to redeem.* One having no interest in land, legal or equitable, at the time a deed was executed by the owner to a third party, cannot maintain a bill to redeem upon the theory that the deed is in fact a mortgage because of an agreement by the grantee to convey the land to him upon payment of a certain sum.

2. SAME—*when party has no legal or equitable interest in land.* The fact that a deed is made in pursuance of an arrangement whereby the grantee releases a mortgage upon other land which was turned in by the mortgagor as part consideration for the deed and the mortgage indebtedness canceled to that extent, does not give the mortgagor a legal or equitable interest which will enable him to maintain a bill to redeem upon the ground that the deed was intended as a mortgage.

*Conkey v. Rex,* 111 Ill. App. 121, reversed.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of LaSalle county; the Hon. S. C. STOUGH, Judge, presiding.

On February 13, 1902, Lewis B. Rex, defendant in error, filed his bill of complaint in the circuit court of LaSalle county against Oscar D. F. Conkey, the plaintiff in error, and Lizzie S. Conkey, his wife, to redeem from a deed executed by one Albert H. Carr and wife, which purported to

convey eighty acres of land in LaSalle county to Oscar D. F. Conkey in fee simple, but which defendant in error claims was intended only as a security for certain moneys then owing by him to Conkey and certain liabilities then incurred by Conkey in Rex's behalf. The bill also asked for an accounting between the parties. An answer was filed by Conkey, and a replication by complainant. The cause was referred to the master, who took the evidence and reported it to the court without conclusions. The court, on November 11, 1902, rendered a decree finding the allegations of the bill true and that the deed from Carr and wife to Conkey, although absolute in form, was in equity a mortgage and intended as a security merely to Conkey for moneys due him from Rex and for moneys assumed to be paid by him in Rex's behalf, and adjudging that Rex be allowed to redeem the land from said deed. The decree refers the cause to the master to take an account between the parties, and orders Rex to pay to Conkey the amount found by the master to be due within six months after the master's report shall be confirmed by the court, and orders Conkey and wife, upon such payment being made by Rex, to convey the land to Rex by good and sufficient deed, and in default thereof that the master execute a deed of the land to Rex. Conkey appealed from said decree to the Appellate Court for the Second District, where the decree was affirmed. He now brings the cause to this court by writ of error.

On June 1, 1889, one Albert H. Carr was the owner in fee simple of said eighty-acre tract, subject to a mortgage thereon securing a note for $1400. On the same date Rex was the owner in fee simple of one hundred and sixty acres of land in South Dakota, subject to a mortgage thereon securing a note to Conkey for $803, with interest from January 27, 1886, at the rate of eight per cent per annum, payable annually. On said first day of June, 1889, Carr, Rex and Conkey met at Mendota, in LaSalle county, by previous arrangement, and the following transfers and transactions

took place: Carr conveyed to Conkey, by deed, the eighty acres of land in LaSalle county at an agreed valuation of $4400, subject to the mortgage for $1400 thereon, which was deducted from the $4400, and the payment of which mortgage, by the terms of the deed, Conkey assumed, Carr to retain possession of the land until March 1, 1890. In consideration of this conveyance, Rex deeded to Carr the one hundred and sixty acres of land in South Dakota at an agreed valuation of $1000, and Conkey released his mortgage thereon, which then amounted to more than $1000. Conkey also executed two notes for $1000 each payable to Carr, one due October 1, 1889, and the other due October 1, 1890, and to secure the same gave Carr a mortgage on the LaSalle county land. Conkey did not surrender the note for $803, which, with interest, had been secured by the mortgage on the South Dakota land. This last mentioned mortgage provided that if default was made in the payment of any of the interest on the $803 note when such interest fell due, the entire note, both principal and interest, should become at once due and payable.

Rex first proposed a trade to Carr, and his theory of the transaction is, that the deed was made to Conkey as security for the payment of the note for $803, with interest, which was still held by Conkey, and as security for the payment by Rex of the mortgage for $1400, assumed by Conkey, and the two notes for $1000 each signed by the latter and delivered to Carr, and as security for the re-payment to Conkey of any money expended by the latter in the payment of said last mentioned mortgage or notes.

The instruments for the several transfers of June 1, 1889, were prepared by one Austin Smith, a justice of the peace and notary public at Mendota. It appears from the testimony of a majority of the persons then present that as a part of the transaction, a written agreement was entered into between Rex and Conkey whereby it was agreed that Rex should go into possession of the LaSalle county land and

pay interest on the $4400, to Conkey until such time, within five years, as he could pay Conkey $1000, in addition to the interest, when the latter should deed the land to Rex and take back notes secured by a mortgage on the land to secure the balance of the money expended or liability incurred by Conkey in making the trade with Carr. This contract was not produced on the trial, witnesses for complainant testifying that it was left with Smith and Smith testifying that it was afterwards obtained by Conkey, who had either destroyed it or had it in his possession. Conkey denied obtaining the contract from Smith, and also denied the making of any such contract. Its terms, above stated, were proved by oral testimony. Rex stated on his examination that he agreed to pay according to such terms.

Afterwards, during the fall of 1889, Conkey leased the LaSalle county land to one Loren Carr for a term of one year from March 1, 1890. Rex had done some plowing on the land during that autumn, and, hearing of this lease, on February 26, 1890, moved into the house on the land without the knowledge of Conkey, and has ever since been in possession of the premises, paying to Conkey a share of the crops worth about $100 the first year and paying $336 each year thereafter, the latter amount being paid in accordance with the provisions of three successive leases, the first dated November 25, 1890, and being for a term of one year from March 1, 1891, and providing for an extension to March 1, 1896; the second dated March 24, 1896, and being for a term of five years from March 1, 1896; and the third dated October 3, 1900, and being for a term of one year from March 1, 1901.

The first lease contained a clause providing that Conkey would convey the land to Rex upon the payment of $1000 within the life of the lease and take a mortgage back to secure the remaining $3400. Rex claims that this clause was inserted in the lease to evidence the former agreement between him and Conkey, which had been left with Smith, and,

as he had been informed, was taken from Smith's possession by Conkey. This clause was not inserted in the second or third lease, nor was any similar provision contained therein. Rex testified that he did not read the second lease before signing and that Conkey assured him that the clause in question was written therein. Conkey denies this. Rex also testified that he knew that the clause was not in the third lease at the time he signed it, but that Conkey told him that although it was not in the lease, he, Conkey, would deed the land to him upon the payment of $1000 any time during the term of the lease. Conkey also denies this.

During the term of the third lease, Rex offered to pay Conkey $1000 and to execute notes and a mortgage for the balance of the money paid out by Conkey on account of the property, and requested a deed for the land. Conkey refused. At this time the land was worth about $100 per acre.

During the terms of the leases above referred to, Rex made various improvements on the property, the cost of making most of which was either paid for by Conkey or allowed as credits to Rex in making payments of the $336 per year provided for in the leases. Rex testified that the cost of such improvements as should be paid for by Conkey was to be added to the amount to be paid by the former in the settlement and transfer of the property to Rex. He also testified that Conkey told him that the interest on the money owing him by Rex and on the liability assumed by him, together with the taxes on the land, would amount to $336 per year, and that such amount was therefore fixed in each of the leases as rent.

Plaintiff in error contends that the proof does not warrant a finding that the deed from Carr to Conkey was a mortgage, from which Rex was entitled to redeem.

M. T. MOLONEY, and J. H. WIDMER, for plaintiff in error:

A deed of land absolute in form with a general warranty of title, and an agreement to re-convey the property to the

vendor or a third person upon his payment of a fixed sum within a specified time, do not, of themselves, constitute a mortgage; nor will they be held to operate as a mortgage unless it is clearly shown, either by parol evidence or by attendant circumstances, such as the condition or relation of the parties or gross inadequacy of price, to have been intended as a security for a loan or an existing debt. *Wallace* v. *Johnstone,* 129 U. S. 58; *Taintor* v. *Keyes,* 43 Ill. 332; *Carr* v. *Rising,* 62 id. 14; *Remington* v. *Campbell,* 60 id. 516; *Hanford.* v. *Blessing,* 80 id. 188; *Eames* v. *Hardin,* 111 id. 634; *West* v. *Hendrix,* 28 Ala. 226; *Flagg* v. *Mann,* 14 Pick. 467; 1 Jones on Mortgages, sec. 260.

If there was any written agreement made between the parties at the time of the transaction, it *prima facie* established the relation between them of landlord and a tenant having an option to purchase the land. The presumption is that it was what it purported to be upon its face,—a presumption that must be overcome by clear and convincing evidence; and hence such a contract would tend strongly to support the deed as an absolute conveyance. *Taintor* v. *Keyes,* 43 Ill. 332; *Carr* v. *Rising,* 62 id. 14; *Remington* v. *Campbell,* 60 id. 516; *Hanford* v. *Blessing,* 80 id. 188; *Eames* v. *Hardin,* 111 id. 634; *Carpenter* v. *Plagge,* 192 id. 82.

Where an interest of either party to a contract is expressed in a written instrument it will be presumed that the actual and entire interest is expressed. *Carpenter* v. *Plagge,* 192 Ill. 82; *Kerting* v. *Hilton,* 152 id. 658.

Rex never had an interest, as owner, in the Carr eighty, and without such interest he could not mortgage it. *Stephenson* v. *Thompson,* 13 Ill. 186; *Caprez* v. *Trover,* 96 id. 456; *Burgett* v. *Osborne,* 172 id. 227; *Carpenter* v. *Plagge,* 192 id. 82; *Heaton* v. *Gaines,* 198 id. 479.

A party may purchase land at the, instance of another, take the deed in his own name, and bind himself to convey it to the person at whose instance it was purchased, on being

212—29

paid the purchase price, without the transaction being a mortgage. *Eames* v. *Hardin,* 111 Ill. 634; *Burgett* v. *Osborne,* 172 id. 243; *Greene* v. *Cook,* 29 id. 186.

Where a person advances money, receives a deed and at the same time gives back a bond for a re-conveyance to the grantor, the transaction inclines to the belief that it was intended as a loan and security. But not so when the conveyance is made by a person to whom the consideration is paid by the grantee, and the obligation to convey is given to another. *Carr* v. *Rising,* 62 Ill. 14; *Taintor* v. *Keyes,* 43 id. 332.

BREWER & STRAWN, for defendant in error:

Every deed conveying real estate which shall appear to have been intended only as a security in the nature of a mortgage, though it be an absolute conveyance in terms, shall be considered as a mortgage. 2 Starr & Cur. Stat. chap. 95, sec. 12.

A deed absolute in form, if intended as a security, is in equity a mortgage, and will be treated as such even though the agreement for redemption rests only in parol. *Insurance Co.* v. *White,* 106 Ill. 67; *Scanlan* v. *Scanlan,* 134 id. 630; *Moffett* v. *Hanner,* 154 id. 649.

Where land is conveyed in fee by a warranty deed, and there is no condition or defeasance either in the deed or in a collateral paper, and parol evidence is resorted to for the purpose of establishing that the deed was given as a mortgage, such evidence must be clear and convincing. *Keithley* v. *Wood,* 151 Ill. 566.

Where there is a defeasance in a collateral paper or contract for a re-sale, and the evidence leaves it in doubt whether the transaction was intended as a conditional sale or a mortgage, it will, as a general rule, be treated in equity as a mortgage. *Keithley* v. *Wood,* 151 Ill. 566; *Jeffery* v. *Robbins,* 167 id. 375; *Rubo* v. *Bennett,* 85 Ill. App. 473; *Landreth* v. *Massey,* 61 id. 147; 20 Am. & Eng. Ency. of Law, (2d ed.)

937, 938; *McNeill* v. *Norsworthy,* 39 Ala. 156; *Turner* v. *Wilkinson,* 72 id. 361; *Crosby* v. *Buchanan,* 81 id. 574.

A deed and a separate defeasance made on the same day are usually construed together as a mortgage. *Preschbaker* v. *Feaman,* 32 Ill. 476; *Snyder* v. *Griswold,* 37 id. 216; *Clark* v. *Finlon,* 90 id. 245; *Tedens* v. *Clark,* 24 Ill. App. 510.

Where a party takes a conveyance of land absolute in form on account of pre-existing indebtedness without surrendering the evidence of indebtedness, equity will generally regard the deed as a mortgage. *Sutphen* v. *Cushman,* 35 Ill. 186; *Ennor* v. *Thompson,* 46 id. 214; *Bearss* v. *Ford,* 108 id. 16; *Darst* v. *Murphy,* 119 id. 343; *Keithley* v. *Wood,* 151 id. 566.

If the conveyance was intended as a security, it is immaterial that the mortgagor afterwards made contracts of leasing. *Lane* v. *Beitz,* 99 Ill. App. 342; *Rubo* v. *Bennett,* 85 id. 473; *Howat* v. *Howat,* 101 id. 158; *Ennor* v. *Thompson,* 46 Ill. 214; *Sutphen* v. *Cushman,* 35 id. 186; *Bearss* v. *Ford,* 108 id. 16; *Brown* v. *Dewey,* 1 Sandf. Ch. 56; *Rogers* v. *Davis,* 91 Iowa, 730.

A court of chancery disregards the form and seeks for the substance of the transaction. *Miller* v. *Thomas,* 14 Ill. 428; *Hunter* v. *Hatch,* 45 id. 178.

It is immaterial that the legal title to the land in controversy was never in the complainant. *Ferguson* v. *Sutphen,* 3 Gilm. 547; *Davis* v. *Hopkins,* 15 Ill. 519; *Smith* v. *Sackett,* 15 id. 528; *Wynkoop* v. *Cowing,* 21 id. 570; *Tillson* v. *Moulton,* 23 id. 648; *Coates* v. *Woodworth,* 13 id. 654; *Scanlan* v. *Scanlan,* 134 id. 630; *Weed* v. *Stevenson,* Clark's Ch. (N. Y.) 166; *Stoddard* v. *Whiting,* 46 N. Y. 627.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This was a bill to redeem. It is shown by the preponderance of the evidence that on June 1, 1889, when Conkey received the deed from Carr, he entered into a written agreement with Rex, by which Rex was to go into possession of

the farm on March 1, 1890, and to continue in possession, paying interest on the purchase money at the rate of seven per cent per annum, and whenever Rex should pay $1000 on the purchase price of $4400, Conkey was to convey the land to Rex by warranty deed, and Rex was to execute notes for the balance, due in five years, secured by a mortgage on the land to Conkey. · It is uncertain what length of time Rex was to have in which to pay the $1000. The evidence tends to show, however, that the period was five years and Rex testifies that he agreed to take the land at $4400 and pay for the same on the terms above mentioned.

On November 25, 1890, Conkey executed to Rex and wife the first lease, which was signed by all three of them, by which the lands were demised to Rex and wife for a term of one year from March 1, 1891, at an annual rental of $336; to continue, upon payment of rent, to March 1, 1896, and which contained this provision: "If the parties of the second part shall pay to the party of the first part $1000 within the life of this lease, then he shall make a deed to the parties of the second part and take a mortgage on said land for $3400 and interest." The purpose of including this in the lease, no doubt, was to evidence the fact that the lease did not abrogate the earlier contract, although its effect was to extend the time within which, by the terms of the contract of June 1, 1889, Conkey was obligated to make a deed upon the payment of $1000.

Under these circumstances, was the deed from Carr to Conkey a mortgage with a right of redemption in Rex, or was Conkey the absolute owner of the property by virtue of that conveyance and the contract between him and Rex merely one for the sale of the land?

It will be observed that prior to the execution of the deed from Carr to Conkey and the execution of the agreement between Conkey and Rex, the latter had no interest, either legal or equitable, in the land. It is true that he had negotiated with Carr for the conveyance, but it was to be a convey-

ance to Conkey. It is true, also, that $1000 of the purchase price was paid by the conveyance of the land in South Dakota from Rex to Carr, but Conkey held a mortgage on the South Dakota land to secure a note given by Rex, on which there was more than $1000 unpaid. The evidence shows that Rex homesteaded this land, but left it and moved back to Illinois in the spring of 1888, and the land after that time was vacant, unoccupied and unproductive. He wanted to dispose of it, and both he and Conkey desired that the indebtedness secured thereon be adjusted. Conkey released his mortgage that the land might be conveyed to Carr, and thereupon Rex became entitled to a credit for the sum of $1000 upon his note. It is insisted by plaintiff in error, under these circumstances, that Rex never had any interest in the land in LaSalle county that he could mortgage, and that consequently the deed from Carr to Conkey cannot be regarded as a mortgage from Rex to Conkey.

In *Heaton* v. *Gaines,* 198 Ill. 479, it was contended that a deed executed by Ford to Gaines, the appellee, was a mortgage from Heaton, and that the latter had a right of redemption. This court said (p. 486) : "The deed from Ford to appellee could not be a mortgage to secure an indebtedness from Edward Smith Heaton, unless it appeared in some way that Edward Smith Heaton had an interest as owner in the lands thereby conveyed. Without an ownership in lands there can be no mortgage of them. (*Payne's Admr.* v. *Patterson's Admrs.* 77 Pa. St. 134; *Carpenter* v. *Plagge,* 192 Ill. 82; *Burgett* v. *Osborne,* 172 id. 227.) Edward Smith Heaton cannot be said to have owned any equity of redemption, which was kept alive by any agreement between Ford and the appellee."

In *Carpenter* v. *Plagge,* 192 Ill. 82, the heirs of the owner of the equity of redemption in a piece of real estate which had been sold under foreclosure, upon the expiration of the twelve months period of redemption, induced Plagge to advance the money necessary to purchase the certificate

of sale, and the latter entered into an agreement giving them the right to pay the purchase money to him, with ten per cent interest thereon, at any time within fifteen months after the purchase, and agreeing, upon such payment being made, to assign such certificate for the benefit of the heirs. Afterward the heirs filed a bill for redemption, claiming the transaction to be a mortgage. The court below denied the relief sought, and the heirs appealed. This court said: "Inasmuch, therefore, as appellants had no interest in the property by reason of the expiration of the twelve months, there was no title in them which they could mortgage."

In *Caprez* v. *Trover,* 96 Ill. 456, it appeared that Caprez was in possession of a certain lot as the lessee of Towner. The lot was offered for sale. Caprez applied to Trover & Miller to purchase the same for him. Thereupon they purchased the lot and took title from Towner to themselves, and agreed that Caprez was to have a deed to the property when the entire cost thereof should be paid by him, within a certain period, to Trover & Miller. After his death, his heirs filed a bill to redeem, claiming the deed to Trover & Miller was a mortgage. This court held otherwise, saying (p. 465): "The deed was not from Caprez, but from Towner, whose duty it was to make an absolute conveyance of the lot. He was entitled to take no mortgage, and his deed was executed as it was intended by all the parties it should be. Indeed, Caprez never had an interest in the lot which was susceptible of being mortgaged. He never had the legal title, and his only claim of an equitable title is a parol contract (condemned by the Statute of Frauds) that the lot would be conveyed to him upon his reimbursing Trover & Miller their outlays in purchasing and improving it."

Defendant in error calls our attention to the fact that a court of equity disregards form and seeks the substance of the transaction, and argues that it is therefore immaterial that the title to the land in controversy was never in Rex. We are referred to a number of authorities in support of this

proposition and find that in each of those cases, where the court has given the matter any consideration, the party in whom the right of redemption was held to exist had some interest in the real estate, legal or equitable, prior to the execution of the deed from the third party to the person held to be a mortgagee; as in *Carr* v. *Carr,* 52 N. Y. 251, where it is said: "It is not material that the conveyance should be made by the debtor or by him in whom the equity of redemption will exist. It is sufficient if the debtor and he who claims to occupy the position of mortgagor with the right of redemption, has an interest legal or equitable in the premises, and the grantee of the legal title has, and acquired, such title by the act and assent of the debtor, and as a security for his debt. (*Stoddard* v. *Whiting,* 46 N. Y. 627.) In the case cited the plaintiff sought to redeem the premises from the defendant, who had taken the title, upon paying a balance due upon a contract of purchase held by the assignor of the plaintiff, who had entered under the contract and paid a part of the purchase money before the arrangement with the defendant, who took the conveyance directly from the original vendor."

In the case at bar, at the time of the execution of the deed from Carr to Conkey, Rex had no interest, legal or equitable, which he could assert, in the real estate; and as he had nothing which could be mortgaged, the deed in question cannot be regarded as a mortgage from him to Conkey.

If Rex's rights under the contract with Conkey still continue, they cannot be asserted by a bill to redeem. His remedy, if any he has,—as to which we express no opinion,—is by bill for specific performance.

The judgment of the Appellate Court and the decree of the circuit court will be reversed, and the cause remanded to the latter court for such further proceedings as to justice and equity may appertain.      *Reversed and remanded.*