## RUSSELL M. BENNETT and Others v. WILLIAM HARRISON and Another.[1]

August 4, 1911.

Nos. 16,677—(45).

**Statute of frauds — part performance.**

A "part performance," to take an oral agreement to convey real estate out of the statute of frauds, must be substantial, and of such a nature that the refusal to enforce the agreement would result, not merely in the denial of the right which the agreement was intended to confer, but in an "unjust and unconscientious" injury.

**Oral agreement not a mortgage.**

One having no interest in land, legal or equitable, at the time a deed was executed by the owner to a third party, cannot assert the rights of a mortgagee therein against the grantee, solely by virtue of an oral agreement made by the grantee to convey the land to him upon payment of a certain sum.

**Possible interest in land — part performance.**

In this case, land was conveyed by the owner to the applicants; they having orally agreed to thereafter convey an interest to the defendant upon payment by him to them, at any time within three years, of a specified sum. The defendant had no interest, legal or equitable, in the land at any time prior to the conveyance thereof to applicants. *Held:*

(a) That the fact that the defendant had a possible broker's oppor-

[1]Reported in 132 N. W. 309.

tunity to find other purchasers for this land, and that he acted for applicants in negotiating a purchase, was not such a change of defendant's situation in "part performance" of the oral agreement as to render the same enforceable.

(b) That through such transaction the defendant did not acquire in the land included in the agreement the equitable interest or title of a mortgagor.

Application to the district court for St. Louis county by Russell M. Bennett, Edmund J. Longyear and William H. Daniels to register title to certain land. George L. Chesebrough and William Harrison served separate answers in which each alleged they became respectively equitable owners in fee simple of an undivided interest in the land described.

The case was tried before Dibell, J., who made amended findings as stated in the opinion. From an order denying the motion of applicants to vacate and set aside the decision and grant a new trial, they appealed. Reversed and remanded, with directions that the conclusion of law be amended in accordance with the opinion and judgment entered.

*Van Derlip & Lum,* for appellants.

*Baldwin, Baldwin & Dancer, John G. Williams* and *W. G. Bonham,* for respondents.

SIMPSON, J.

This is an application to register title to lot 5, township 58 north, range 15 west. After issue joined and trial, the court, by amended findings and decree, determined that Russell M. Bennett was the owner of an undivided seven-eighteenths of lot 5, Edmund J. Longyear of an undivided seven-eighteenths, and William H. Daniels of an undivided four-eighteenths, subject to certain mining leases and agreements for the payment of royalties; and, further:

"That the interest of said Russell M. Bennett and Edmund J. Longyear in the two-thirds ($\frac{2}{3}$) of the fee of said lands, acquired by the deed from William J. Atwell to Rollin N. Dow, and the deed from Rollin N. Dow to said Bennett and Longyear, is subject to the right of said defendant George L. Chesebrough and said defendant William Harrison to have from them a deed or conveyance of an un-

divided two-ninths (²⁄₉) of an undivided two-thirds (²⁄₃) of the fee of said land, the same being an undivided four twenty-sevenths (⁴⁄₂₇) thereof, upon the payment to them by said Chesebrough and said Harrison of the sum of $8,777.77, with interest thereon from October 3, 1906, at the rate of five per cent. per annum; and the right of said Chesebrough and said Harrison to have such conveyance and deed upon such payment is hereby adjudged."

After unsuccessfully moving for certain amendments, the applicants Bennett and Longyear moved that the decision be vacated, and that a new trial be had. This motion being denied, they bring the case to this court by their appeal from the order denying such motion.

The applicants claim that, under the facts as shown by the evidence and found by the trial court, the defendants Chesebrough and Harrison have no right or interest in the fee of the land involved, and that the portion of the decision above quoted is not sustained by the evidence or findings of fact. The facts found by the trial court bearing on this contested point are:

"That in the month of September, 1906, said defendant Chesebrough called the attention of said applicants Bennett and Longyear to the matter of purchasing the fee of said William J. Atwell in a two-thirds (²⁄₃) of said lands; that said defendant Chesebrough had no interest in the fee of said Atwell, had no contract or agreement of any kind, either verbal or written, for the purchase or sale thereof, and had no property right therein or claim thereto; that said Chesebrough was engaged as a broker in the buying and selling of mining lands; that he had no acquaintance or connection with said Atwell; that he then knew that said A. P. Cook was the one through whom Atwell could likely be reached and a purchase made, and said defendant Chesebrough was then in a favorable position for obtaining title to the said Atwell interest; that said Bennett and Longyear were not in a position where they could likely obtain title without the aid of some one; that he then represented to them that he thought the fee of said Atwell could be purchased for the sum of $25,000, and that he would be able, as in fact he was, to secure the same through said Cook; that in case said Atwell interest should be

purchased, he, said Chesebrough, would be unable to obtain any commission, and that he desired to acquire for himself an interest therein; that said applicants Bennett and Longyear were desirous of obtaining title to said Atwell interest; that it was thereupon agreed orally between said applicants Bennett and Longyear and said defendant Chesebrough that said defendant should and would do what he was able to do in securing a transfer and conveyance of the Atwell interest; that said property should be purchased of said Atwell in the name of said applicants Bennett and Longyear, or in the name of the clerk of one of them; that said Bennett and Longyear should pay the purchase price thereof; that said defendant Chesebrough should have a two-ninths ($\frac{2}{9}$) interest in the two-thirds ($\frac{2}{3}$) interest of said Atwell, being a four twenty-sevenths ($\frac{4}{27}$) of the whole fee of said lands, and should pay two-ninths of the purchase price thereof to said Bennett and Longyear at any time within three years from said date, with interest thereon at the rate of five per cent. per annum; that upon such payment said Chesebrough should have a deed of such interest from said Bennett and Longyear, or from the person in whose name title should be taken."

Facts further found in detail, briefly stated, are: Upon completion of the purchase, a contract was to be given. Chesebrough, containing the foregoing agreement, and Chesebrough was to give Bennett and Longyear, as security for the payment to be made by him, certain royalty agreements. Chesebrough, in attempting to secure a transfer of the Atwell interest, learned it could not be secured for less than $35,000. Bennett and Longyear thereupon agreed with him that it should be purchased at that price under the same arrangement. Chesebrough then had Cook procure a deed of the Atwell interest made to Bennett and Longyear's clerk, who later conveyed to Bennett and Longyear, and Bennett and Longyear paid the $35,000 purchase price.

After receiving such deed, Bennett and Longyear refused to execute a contract to Chesebrough pursuant to the agreement, and refused to convey an interest in the land to Chesebrough, although Chesebrough demanded such contract, "after doing all the things required of him by said agreement." And, further, "that when said

Bennett and Longyear entered into said oral agreement with said Chesebrough they intended in good faith to abide by it and to carry out its terms."

It is further found that the defendant Chesebrough thereafter transferred to the defendant Harrison one-half of his interest under such agreement.

By his memorandum the trial judge indicated that the theory on which the right of Chesebrough and Harrison to a deed of an undivided four twenty-sevenths of the land was adjudged is that the facts found created an equitable mortgage.

The defendants take the position that the transaction constitutes an equitable mortgage, but, if not, that the facts establish an oral agreement to convey land, which is taken out of the statute of frauds by the part performance on the part of Chesebrough.

The applicants take the position, first, that no equitable mortgage was created because at the time of the transaction claimed to constitute a mortgage Chesebrough had no estate or right in the land, has never had any mortgageable interest therein, and the arrangement made was within the statute of frauds; second, that specific performance of the oral agreement to convey cannot be decreed because there was no such partial performance of the agreement as to take it out of the statute of frauds.

The findings of fact are relied upon by the defendants as sufficient to sustain the conclusion upon either position taken by them; that is, as showing an equitable mortgage or an oral promise to convey. There is no specific finding that the claimed interest of Chesebrough was agreed to be held as security, or that it was so held. Chesebrough's version of the conversation which constituted the agreement contains some phrases tending to characterize it as a mortgage, and others equally apt to characterize it as a privilege to buy in the future at a specified price. The applicants claim that from the evidence nothing could be found beyond an oral promise to sell an undivided interest to Chesebrough, if they acquired the land, made on the representation of Chesebrough that he would be unable to obtain a commission from the seller. The applicants further claim from the evidence that Chesebrough, contrary to such rep-

resentation, did receive $1,000 as a commission from Cook, and that they thereupon refused to carry out their oral agreement, but offered to pay to Chesebrough an additional sum to make a full broker's commission. The trial court made no finding as to whether or not Chesebrough did receive $1,000 as a commission, and, if so, the circumstances of such payment; but in the decision Chesebrough and Harrison are required to pay, in consideration of a conveyance of the specified interest, $1,000 in excess of two-ninths of the amount paid for the Atwell interest. The controversy arising out of the claimed receipt by Chesebrough of $1,000, and the subsequent refusal on the part of Bennett and Longyear to carry out the oral agreement and the charges and countercharges of bad faith are not material to the decision of the legal status of the parties, and presumably, for that reason, the facts with reference thereto are not fully found, and the question need not here be discussed.

While a number of the errors assigned by the applicants go to the refusal of the trial court to change or add to the findings, yet their main claim is, as stated above, that the facts found do not sustain the decision on any theory, and counsel for the defendants and applicants have discussed fully their conflicting claims as to the decision being sustained by the facts found upon either theory—that of an equitable mortgage, or a right to specific performance of a promise to convey. We will dispose of the case as thus submitted. It will not be necessary, therefore, to consider whether, under the evidence, the findings should be limited to a finding of the existence of one or the other agreement.

Considering, first, the claim chiefly urged by counsel for defendant Chesebrough that the decision made may be sustained as a decree for the specific performance of an agreement to convey land: This claim assumes that the oral promise made by Bennett and Longyear to convey to Chesebrough an undivided two-ninths of the Atwell interest was so in part performed by Chesebrough as to take the agreement out of the statute of frauds. The equitable doctrine thus invoked rests on the ground of fraud. "The underlying principle is that, where one of the contracting parties has been induced or allowed to alter his situation on the faith of an oral agreement

within the statute, to such an extent that it would be a fraud on the part of the other party to set up its invalidity, equity will make the case an exception to the statute." Brown v. Hoag, 35 Minn. 373, 29 N. W. 135.

The courts have not attempted to define what extent or character of change in the situation induced by the oral agreement will be sufficient to estop the party inducing such change from questioning the validity of the oral promise. It must be a change of such character and to such an extent that the interposing of the defense of the statute would be a fraud. The mere denial of the right promised by the oral agreement, the loss of that which existed only by virtue of the oral promise, being deprived of the bargain, does not create an exceptional situation as to the statute, but the very situation the statute covers. To take a case out of the statute because of such resulting loss or injury annuls the statute. The injury or loss which would result from the enforcement of the statute must arise from the acts done in performance or in pursuance of the oral agreement, and such acts must so far alter the situation of the parties seeking to avoid the statute that it would be unjust and against conscience to allow the other party, who has permitted such change to take place in pursuance of his oral agreement, to thereafter refuse to perform on his part. Brown v. Hoag, supra; Slingerland v. Slingerland, 39 Minn. 197, 39 N. W. 146; Thomas v. Rogers, 108 Minn. 132, 121 N. W. 630, 133 Am. St. 421.

In the instant case, Chesebrough had no interest in the Atwell land. He had a broker's chance to attempt to buy it if he found some one ready to buy, for whom he could act. His knowledge of or information as to the situation was that one Cook was in position to negotiate with the owner, and that the land probably could be bought. Under these circumstances, Chesebrough stating that he would be unable to get a commission from the owner, Bennett and Longyear made the oral agreement with him that, if he succeeded in buying the Atwell title for them, they would give him a contract for the purchase of an undivided two-ninths. Thereafter he did successfully negotiate, through Cook, the purchase by Bennett and Longyear of the Atwell title. Clearly neither the services per-

formed by Chesebrough in negotiating the purchase nor the loss of the opportunity to buy the undivided two-ninths from Bennett and Longyear, by their refusal to carry out the oral agreement, takes the agreement out of the statute under the rule invoked. Thomas v. Rogers, supra; Townsend v. Fenton, 32 Minn. 482, 21 N. W. 726; Levy v. Brush, 45 N. Y. 589; Russell v. Briggs, 165 N. Y. 509, 59 N. E. 303, 53 L.R.A. 556.

It is urged, however, that Chesebrough, in reliance on the oral promise of Bennett and Longyear, lost an opportunity to buy the land himself, or to find other purchasers who would give him an interest in the land. While this opportunity affords a wide range of conjecture and speculation as to possible results, its surrender does not bring Chesebrough within the principle here invoked. He lost a broker's chance to find a buyer and get in touch with Cook and make a sale—a chance open to others. Every broker who succeeds in closing a deal evidences a somewhat favorable position with reference to that deal. This opportunity was clearly something indefinite, general, and unsubstantial. There must be a definite and substantial change in situation, in performance, or in furtherance of the oral agreement before it can be said that it would be a fraud to invoke the statute against such agreement. Browne, Statute of Frauds, §§ 445, 460; Lanz v. McLaughlin, 14 Minn. 55 (72); Thomas v. Rogers, supra; Dunphy v. Ryan, 116 U. S. 491, 6 Sup. Ct. 486, 29 L. ed. 703.

In the cases (Slingerland v. Slingerland, supra, and White v. Poole, 74 N. H. 71, 65 Atl. 255) greatly relied on by respondents' counsel as sustaining his claim herein, acts clearly resulting in a substantial definite change in situation were performed in pursuance of the oral agreement. In this fundamental particular, these cases differ from the instant case.

The other ground on which it is claimed the decision may be sustained is that the transaction between Chesebrough, on the one hand, and Bennett and Longyear, on the other, constituted an equitable mortgaging of two-ninths of the Atwell title by Chesebrough to Bennett and Longyear. By the decision the right of Chesebrough and

Harrison to a conveyance and deed of an undivided two-ninths of the Atwell two-thirds of lot 5 is adjudged.

Prior to the making of the oral agreement, Chesebrough had no title to or interest in the Atwell land. Through the Atwell deed to Bennett and Longyear's clerk, Chesebrough lost, conveyed, or allowed to lapse no equitable or legal title or interest in the property included in the Atwell deed. Atwell, when he deeded, neither intended to nor did convey any right or interest belonging to Chesebrough, nor intended to nor did convey any right or interest to Chesebrough. If any right or interest in the land ever did vest in Chesebrough, it is solely through the oral promise of Bennett and Longyear; that is, through the oral promise of the persons against whom the promise is sought to be enforced. Upon this point there can be no difference in statement under the facts of this case. But it is claimed that, because Bennett and Longyear's promise to Chesebrough was to hold the land as security, thereby such oral promise to convey on payment by Chesebrough becomes enforceable against the persons making the promise, as conferring an equity of redemption. The very apparent departure from recognized rules governing the transfer of interests in realty involved in this claim, coupled with the fact that the court below makes it the basis for a decree transferring a considerable interest in lands, invites a careful consideration of the principles governing the creation of equitable mortgages.

It is elementary that any interest in real estate which may be sold or assigned may be mortgaged; and, conversely, that some estate or interest capable of being mortgaged, held by the mortgagor, is essential to the existence of a mortgage. When a transaction constitutes a mortgage, therefore, there must be, either, independently of the transaction, some interest in the mortgagor capable of being mortgaged, or through the transaction itself such interest must be acquired by the mortgagor. Courts of equity have long been concerned with preserving from forfeiture this interest in the mortgagor. The designation given that interest—equity of redemption —suggests the history of its preservation rather more clearly than its nature. In accord with other principles of equity affording protection to the interest of the mortgagor, it is the established law that,

where an interest in land is parted with as security, equity will, regardless of the form of the transfer, treat it as a mortgage. The generally accepted and announced rule is: A deed or conveyance of land, absolute and unconditional on its face, but intended by the parties to be security, will be regarded and treated in equity as a mortgage. The form of the transaction will not preclude an inquiry into its true nature. "Nor need the deed even be made by the debtor. It is sufficient if the debtor, who claims to occupy the position of a mortgagor with the right of redemption, *has an interest, legal or equitable, in the premises,* and the grantee of the legal title acquired it by the act and assent of the debtor and as security for his debt." 27 Cyc. 993.

As stated in Fisk v. Stewart, 24 Minn. 97, "nor is it at all important as affecting the rights and obligations of the party taking the conveyance that he received it from another, who happens to hold the legal title, instead of the borrower, in whom is vested the equity of redemption, so that it is obtained through the instance and request of the latter and for his benefit."

And in Niggeler v. Maurin, 34 Minn. 118, 24 N. W. 369, "plaintiff, being vested with the equitable title, had an interest capable of being mortgaged. * * * It is entirely immaterial, under such circumstances, whether the trustee of the legal title should convey to the mortgagee directly by the arrangement of the parties, or that it should pass to him through the mortgagor." Randall v. Constans, 33 Minn. 329, 23 N. W. 530; Sons of Temperance v. Brown, 9 Minn. 141 (151); 20 Am. & Eng. Enc. (2d ed.) 915, 943; Jones, Mortgages, §§ 136, 331.

The nature or extent of the interest in the premises, or the manner in which it is evidenced, is unimportant; but under the rule as stated there must be some interest in the claimed mortgagor which, but for the protection of a court of equity, would be surrendered and lost through the transaction. In the instant case, at the time of making the oral agreement with Bennett and Longyear, Chesebrough had no right or interest, legal or equitable, in the land. He was a stranger alike to Atwell and to Atwell's title at that time. Therefore there was nothing belonging to Chesebrough, either actu-

ally or potentially, which he could mortgage, and therefore nothing a court of equity could protect from the operation of an instrument or a transaction intended as a mortgage, but in form something else. Through the transaction here involved, Chesebrough transferred, surrendered, or lost no interest or right connected with the land involved. If it is determined that he now has no right in the land, his complaint could only be that by the transaction he did not *acquire* an interest—the interest orally promised by Bennett and Longyear. The requirement of some interest in the land mortgaged is, of course, satisfied if, as part of the carrying out of the transaction constituting the mortgage, such interest is transferred by any lawful means to the mortgagor. Such would have been the instant case if, to carry out or as part of the transaction, Atwell had deeded to Chesebrough, and he, in turn, had deeded to Bennett and Longyear, or if Bennett and Longyear had given to Chesebrough a written contract evidencing an interest in the land, or if there had been "part performance" by Chesebrough of the oral agreement.

It is claimed on the part of the defendants that certain recent cases, including one in this state, show a departure from or denial of the rule that an interest in the mortgagor, created or evidenced by something outside of the oral mortgage agreement, is essential to the finding of an equitable mortgage. The decisions of other courts so relied upon are: Starks v. Redfield, 52 Wis. 349, 9 N. W. 168; Schriber v. Le Clair, 66 Wis. 579, 29 N. W. 570, 889; Jourdain v. Fox, 90 Wis. 99, 62 N. W. 936; Schneider v. Reed, 123 Wis. 488, 101 N. W. 682; Jones v. Gillett, 142 Iowa, 506, 118 N. W. 314, 121 N. W. 5; Krebs v. Lauser, 133 Iowa, 241, 110 N. W. 443; Campbell v. Freeman, 99 Cal. 546, 34 Pac. 113; Watts v. Kellar, 56 Fed. 1, 5 C. C. A. 394; Hall v. O'Connell, 51 Or. 225, 94 Pac. 564.

The decision in no one of these cases goes to the extent necessary to sustain the position of the defendants in the instant case. In each one the claimed equitable mortgagor was related to the title by some means other than the oral promise of the mortgagee—the person against whom the promise was sought to be enforced. The opinions in these cases do not, as we understand them, announce

the rule that without such relation, solely on the oral promise of the mortgagee, an interest in the land may be transferred to the mortgagor. A failure to distinguish the cases in which the equitable mortgage may be found, because, as part of the transaction, by written instrument or other effectual means, an interest in the mortgaged land is transferred to the mortgagor, from the cases in which the creation of the equitable mortgage must depend upon a prior interest of the mortgagor has caused some confusion of statement in the cases.

In the cases of Stitt v. Rat Portage Lumber Co. 96 Minn. 27,. 104 N. W. 561, and Grout v. Stewart, 96 Minn. 230, 104 N. W. 966, this court had under consideration transactions constituting equitable mortgages, but the decision in neither case goes to the extent necessary to sustain the title of the defendants in the instant case. In the Stitt case the parties claiming as equitable mortgagors contracted with the owners for the purchase of the lands involved; the money for such purchase being advanced by the other party, in whose name title was taken as security for the repayment of the purchase price so advanced. Further, under the arrangement, the claimed mortgagors, "pursuant to the agreement, procured deeds to the lands involved, went into possession thereof, built camps, cleared out logging and tote roads, constructed dams, cleaned out streams, opened up part of the lands as a farm, and raised crops." They paid on the mortgage indebtedness a large sum. From these facts the conclusion that there was a part performance of the oral agreement was properly reached. Upon this argument it is urged that an examination of the record in the Stitt case discloses that in three tracts of the land the claimed mortgagors did not acquire an interest through contracts with the owners. If such be the fact, the decision of this court rendered in that case as to these three tracts is fully sustained within the general rule first stated, because of the part performance of the contract. In the Grout case the person who claimed as mortgagor had an interest in the land mortgaged prior to the transaction constituting the equitable mortgage.

A state of facts very similar to the facts in the instant case was before the supreme court of Illinois in the recent case of Heaton v.

115 M.—23.

Gaines, 198 Ill. 479, 64 N. E. 1081. The court in that case thus announces the rule which we deem applicable to the facts in the present case: "Without an ownership in lands, there can be no mortgage of them. Payne's Admr. v. Patterson's Admrs. 77 Pa. St. 136; Carpenter v. Plagge, 192 Ill. 82 [61 N. E. 530]; Burgett v. Osborne, [172 Ill. 227, 50 N. E. 206]. Edward Smith Heaton cannot be said to have owned any equity of redemption which was kept alive by any agreement between Ford and the appellee. Heaton had no interest in the property, which could sustain a parol agreement by appellee to buy the property for his benefit, and to convey it to him when required. Inasmuch as such an agreement, even if it existed, created an interest in land by parol, it could not be sustained under the statute of frauds. A naked promise by appellee to buy lands in his own name, pay for them with his own money, and hold them for the benefit of Edward Smith Heaton could not be enforced in equity. Howland v. Blake, 97 U. S. 624 [24 L. ed. 1027]; Stephenson v. Thompson, 13 Ill. 186; Perry v. McHenry [13 Ill.] 227; Magnusson v. Johnson, 73 Ill. 156; Caprez v. Trover, 96 [Ill.] 456; Wilson v. McDowell, 78 [Ill.] 514." Carpenter v. Plagge, 192 Ill. 82, 61 N. E. 530.

And in Conkey v. Rex, 212 Ill. 444, 72 N. E. 370: "Defendant in error calls our attention to the fact that a court of equity disregards form and seeks the substance of the transaction, and argues. that it is therefore immaterial that the title to the land in controversy was never in Rex. We are referred to a number of authorities in support of this proposition, and find that in each of those cases, where the court has given the matter any consideration, the party in whom the right of redemption was held to exist had some interest in the real estate, legal or equitable, prior to the execution of the deed from the third party to the person held to be a mortgagee. * * * In the case at bar, at the time of the execution of the deed from Carr to Conkey, Rex had no interest, legal or equitable, which he could assert, in the real estate; and as he had nothing which could be mortgaged the deed in question cannot be regarded as a mortgage from him to Conkey."

No matter how much obscurity may arise from the application of

the doctrine to complicated facts, the doctrine of equitable mortgages cannot be made effectual to convey or transfer a title to the mortgagor, but finds its full scope in protecting the interest of the mortgagor—any legal or equitable right or interest in the land—by preserving a right of redemption.

This principle that some right or interest of the mortgagor in the land mortgaged is a prerequisite to the creation of an equitable mortgage finds its importance, not merely as a definition of a mortgage, nor because it adds to the equities of the mortgagor. Many situations disconnected from any interest in the land may present equally serious and quite similar hardships if the form of the writings control the nature of the transaction in a given case. But if the rule were relaxed or abrogated to the extent necessary to sustain a finding of an equitable mortgage in the instant case—that is, a right to the fee in Chesebrough and a mortgage lien right in Bennett and Longyear— a fundamental change would thereby be made in the law governing the transfer of interests in land, and a change directly in conflict with the statute of frauds. It is frequently and correctly stated that the statute of frauds has no application to parol proof of an equitable mortgage, but this is for the obvious reason that such proof by establishing an equitable mortgage does not transfer to the mortgagor an interest in land. The oral proof simply limits the effect of a conveyance absolute in form to the agreed effect—a transfer as security. Glass v. Hulbert, 102 Mass. 24, 3 Am. Rep. 418; Campbell v. Dearborn, 109 Mass. 130, 12 Am. Rep. 671.

Such is the stated rule in Stitt v. Rat Portage Lumber Company, supra: "That a deed, absolute on its face, can be shown by parol evidence to be in fact a mortgage is elementary. * * * Parol evidence is admissible for this purpose, notwithstanding the statute of frauds."

But if a parol agreement, though containing the terms of a mortgage, is relied on to transfer the fee to the mortgagor, to such agreement the statute of frauds is exactly applicable. Such agreement, in so far as it transfers an interest to the mortgagor, is not properly described as an agreement for an equitable mortgage. Equity never transferred a title to the mortgagor by the doctrine of

equitable mortgages. That doctrine fulfils its purpose by protecting the title vested by other means in the mortgagor. In effect, the defendants' claim is that solely by parol agreement—an agreement supported by a consideration, but not in writing—they are vested with the estate or interest of the mortgagor in a tract of land. That such interest is an equitable estate matters not, for it is thereby potentially a legal estate. The form of the decree in this case is that the right of the defendants to have a conveyance and deed of the property in question upon the payment of a specified sum is adjudged. The complete legal title is transferred without a writing signed by the party required to make the transfer, or without any right acquired from any other party having an interest in the land. It is apparent that the fact that the title in the present case comes from a third party is not a distinguishing feature; the claimed mortgagors confessedly having no relationship to such third party, or through him, with the land. Chesebrough derives all his rights from Bennett and Longyear's title, and their oral agreement. His services as broker furnish sufficient consideration for the promise to convey, but in no way establishes any relationship with the source of their title. If a title can be decreed in Chesebrough under these circumstances, then equally, if Bennett and Longyear, for a good consideration, made the same oral promise as to a tract of land which they had long owned, the relationship of mortgagor and mortgagee would equally be created, and a mortgagor's title vested in Chesebrough. In legal principle there is no distinction between the instant case and any case where the owner of land orally agreed to convey the same to another for a specified price, promising to hold the land as security until the payment of the price.

It is unnecessary to discuss the wisdom of the legislation requiring contracts for a transfer of real property to be in writing. The statute of frauds expresses the fixed legislative policy of the state, and the court should not, by the extension of any equitable doctrine beyond established limits, interfere with such legislative policy. The instant case illustrates one of the very situations that the statute was passed to avoid. A valuable interest in land is made dependent upon the conflicting oral evidence of the interested parties. The

trial court, while determining the nature of the transaction as claimed by the defendants, resolved the dispute as to the extent of interest promised in accordance with the claim of the applicants. The statement made by one of the counsel for the defendants, in his brief, that the titles to many valuable tracts of ore-bearing lands were continually being transferred in the northern part of the state in fulfilment of oral promises suggests the inadequacy of any system of law to protect those who may suffer loss through intentional voluntary disregard of well-understood legal requirements.

The facts found do not sustain the decision adjudging the defendants, on payment of a specified sum, entitled to a conveyance of an undivided four twenty-sevenths of the land involved in the application for registration, on either theory advanced by the defendants. The trial court was clearly correct in the opinion expressed that the facts found do not show a joint venture or partnership between Bennett and Longyear and Chesebrough in the Atwell land; nor could Bennett and Longyear be adjudged thereunder to hold an interest for Chesebrough as trustees. We conclude the decision of the court below is not sustained by the findings of fact.

The order appealed from is reversed and the cause remanded, with directions that the conclusion of law and decision be amended in accordance with this opinion, and judgment entered therein.

LEWIS, J. (dissenting).

I dissent. The decision reached by the majority is based upon the premise that it is essential to the existence of an equitable mortgage that some estate or interest in the debtor shall exist at the time of the creation of the mortgage relation. If this premise is sound, then the facts of this case are not within the rule, and the decision of the majority is correct. But, if the doctrine of equitable mortgage is not based upon the fact of a pre-existing interest in the mortgagor, then the argument of the opinion and the conclusions reached are not justified by the facts.

In most of the cases where the doctrine has been discussed, it was conceded that the mortgagor or debtor had an interest, or owned the land, and the title was conveyed under an agreement to hold it as

security for a loan, and the discussion of the general principles involved in those decisions did not necessarily reach back to the roots of the doctrine. For instance, in Niggeler v. Maurin, 34 Minn. 118, there was no question but what Mr. Niggeler was the owner in fee of the property when he deeded it to Mr. Maurin, and the expression of the court that the plaintiff was vested with the equitable title and had an interest capable of being mortgaged was sufficient for the occasion.

It is admitted that Bennett and Longyear agreed to carry Chesebrough for the amount represented by two-ninths of the two-thirds purchased. They advanced the money for him, and agreed to hold the title in their own names as part security for the loan. There was talk of Chesebrough furnishing additional security, and the moneys coming in on the roylaties were to be applied in part payment. The transaction clearly amounted to a joint purchase of the two-thirds interest in the proportion of two-ninths by Chesebrough, and seven-ninths by Bennett and Longyear, they to hold his interest as security for the advancement by them. The transaction was not a purchase of the entire interest by Bennett and Longyear, and then a resale of the two-ninths to Chesebrough. Let us suppose that Atwell had conveyed the two-ninths interest to Chesebrough and the seven-ninths interest to Bennett and Longyear, and that Chesebrough had executed a mortgage upon his two-ninths interest to Bennett and Longyear to secure them for the advancement to pay for his interest, would the transaction have been any more a mortgage than was accomplished by what actually did take place? Under the arrangement Chesebrough acquired an interest in the purchase the instant Bennett and Longyear became the grantees, and the agreement that Bennett and Longyear hold that interest as security became at once effective. The transaction resulted in creating an equitable mortgage in favor of Chesebrough, although his interest and the mortgage relation were created at the same time by the same transaction.

In the majority opinion, reference is made to Schriber v. Le Clair, 66 Wis. 579, 29 N. W. 570, 889, and to other cases from Wisconsin, Iowa, California, and Oregon, and it is stated that no

one of the cases goes to the extent necessary to sustain the position of the decision in this case. It all depends upon the point of view. As I read most of those cases, they stand for the doctrine that the interest of the mortgagor may be created simultaneously with the agreement to hold that interest as security for a loan; that such an arrangement is just as effective to create an equitable mortgage as where the title has been conveyed by the debtor under an agreement that it be held as security. In Schriber v. Le Clair, the court ignored the writing and went back to the original agreement, which was proved by parol.

The principle is stated in Krebs v. Lauser, 133 Iowa, 241, 110 N. W. 443, but it was held that the evidence was insufficient to meet the rule that an absolute deed cannot be established as a mortgage, except upon clear and satisfactory evidence.

The doctrine was applied later in Jones v. Gillett, 142 Iowa, 506, 118 N. W. 314, 121 N. W. 5. In that case Jones, desiring to purchase the land from one Davidson for $1,760, applied to Gillett for a loan of a part of the purchase money; it being verbally agreed between them that the defendant would advance the necessary amount at seven per cent. and take a deed for the land from Davidson as security. Subsequently the defendant agreed to advance the entire purchase price, and took a deed from the owner with that understanding, and secured himself for the payment of the interest by a nominal lease of the land at a rental which amounted to seven per cent. of the purchase price, and finally defendant repudiated the contract and attempted to hold the land. The court said that parol evidence was admissible to show that the deed was subject to an agreement that the defendant should hold the title as security only.

To the same effect is Hall v. O'Connell, 52 Ore. 164, 95 Pac. 717, 96 Pac. 1070. The facts were essentially the same as here, with the exception that in this case Chesebrough bought only a part, instead of the entire, interest.

As I understand the case of Stitt v. Rat Portage Lumber Company, 96 Minn. 27, 104 N. W. 561, this principle was applied to the three tracts of land known as the "Loper & Rumery," the "Mur-

ray," and the "Houlton," with respect to which Mr. Stitt had no interest, legal or equitable, and it was held that it might be shown by parol evidence that the company had taken title to those lands under an agreement to hold them as security. That part of the opinion dealing with the doctrine of equitable estoppel was written advisedly, and the case was not disposed of on the ground that the contract had been partly performed.