### RICHARD CHAPEL v. THOMAS CHAPEL AND OTHERS. JOHN D. McMILLAN v. THOMAS CHAPEL AND OTHERS.[1]

January 14, 1916.

Nos. 19,622, 19,623—(247, 248).

**Vendor and purchaser — specific performance of land contract.**

    1. The statute of frauds renders an oral agreement to convey land unenforceable by the vendee, unless he has performed it upon his part,

1 Reported in 155 N. W. 1054.

---

Note.—As to sufficiency of possession alone as ground for granting specific performance of parol contract to convey real estate, see note in 8 L.R.A.(N.S.) 870.

and has changed his situation in reliance upon it in such manner and to such extent that he can neither be placed *in statu quo*, nor be justly and fully compensated in money for such change in situation.

**Specific performance.**

2. The doctrine of specific performance rests upon the theory that one party has estopped himself from invoking the statute, by permitting the other party to change his situation in reliance upon the contract to such an extent that enforcing the statute would operate as a fraud upon him.

**Same.**

3. The respondent has not changed his situation in such manner or to such extent in reliance upon the oral agreement as to bring this case within the class of cases in which specific performance is decreed.

Two actions in the district court for Houston county, one by Richard Chapel and the other by J. D. McMillan, as administrator of the estate of Harvey Chapel. The facts are stated in the opinion. The cases were tried together before Quinn, J., who made findings and ordered judgment in each case in favor of plaintiff. Defendants' motions for amended findings and conclusions of law were denied. From the judgments rendered pursuant to the orders for judgment, J. D. McMillan, as administrator, Thomas Chapel, Jesse Gordon, James Chapel and Mabel Mury appealed. Reversed.

*Duxbury & Duxbury, Edward Lees* and *George W. Bunge,* for appellants.

*John W. Hopp,* for respondent.

TAYLOR, C.

Harvey Chapel died March 2, 1912, leaving as his heirs at law his widow, Julia Chapel, and five sons and three daughters. At the time of his death, he owned a considerable quantity of personal property and several tracts of land all located in Houston county.

In September, 1913, Richard Chapel, one of the sons, brought an action to enforce specific performance of an oral agreement alleged to have been made between himself and his father in September, 1909, whereby his father promised to convey to him the land known and designated as the "Money Creek farm." Richard made the administrator of

his father's estate, his mother, and all his brothers and sisters defendants in the action.

In September, 1909, Harvey Chapel, his wife joining therein, executed separate deeds to four of his children and placed them in the hands of S. B. McIntire to be delivered after the death of himself and his wife. These deeds covered all the real estate owned by him, but after his death were claimed to be void for the reason that he had reserved the right to recall them at any time during his lifetime. After his death, the administrator of his estate brought an action to determine adverse claims to the real estate and made the widow and all the children parties thereto. Richard interposed an answer, setting forth his alleged agreement with his father and demanding specific performance thereof. The widow, Julia Chapel, died in February, 1914, and the representative of her estate was substituted in her stead in both actions.

The two actions were tried together, and the trial court rendered a judgment in each action to the effect that Richard was the owner of the land claimed by him. The administrator and part of the children appealed from both judgments. The questions presented are whether Richard established facts entitling him to specific performance of the alleged contract; whether the evidence sustains the findings in respect to the terms of such contract; whether the contract included all the property awarded to Richard thereunder, and whether the statute barred Richard's wife from testifying to the oral agreement made with his father.

Richard was married in January, 1894, and in 1898, purchased a farm of 80 acres near Sparta, Wisconsin, where he and his family resided until 1910. His parents made a visit to him at his home upon this farm in the latter part of August or early part of September, 1909. The oral agreement upon which Richard bases his claim to the Money Creek farm was made during this visit, and those present when it was made were his father and mother, and his wife and himself. As his father and mother have since died, the statute barred Richard from testifying as to the conversation with his father, but his wife was permitted to give this conversation. She testified in substance that a brother of Richard was then operating the Money Creek farm; that the father, Harvey Chapel, had determined to operate it himself the following year; that

he said, "I want to farm to suit myself to show people what I can do when I am manager;" that he asked "if we would be willing to dispose of our home in Sparta and to move to. Money Creek, if he would give us the Money Creek farm; we should pay fifteen hundred dollars to Anna Rank (a sister of Richard), my husband to work there one year for four hundred dollars, at the end of the year he would give him the deed;" that Richard accepted this proposition and she also agreed to it, and that this was the only conversation ever had with Harvey Chapel in reference to the matter. Richard sold his farm and also the bulk of his personal property, and on March 15, 1910, moved upon the Money Creek farm. His parents did not reside upon the farm but in the village of Houston. During the ensuing season the work upon the farm was performed by Richard and his father and by hired help. The father paid the hired help and all other bills, and took all the proceeds of the farm except some minor products used in Richard's family.

Difficulties seem to have arisen between the old gentleman and Richard and his wife, and Richard removed from the farm two weeks before his year expired and has never since had anything to do with it. His father paid Richard $400 for his work, paid Richard's son, a boy of 15, at the rate of $25 per month for work performed during school vacation, and paid Richard's wife $50. Richard afterward purchased another farm upon which he has resided ever since.

1. Assuming the contract to have been made as claimed by Richard, the question presented at the outset is whether there has been a sufficient part performance of the contract to take it out of the statute of frauds. The statute of frauds renders the contract void and unenforceable, unless Richard has performed it upon his part, and has changed his situation in reliance upon it in such manner and to such extent that he can neither be placed *in statu quo,* nor be justly and fully compensated in money for such change in situation. In Brown v. Hoag, 35 Minn. 373, the court say at page 377, 29 N. W. 135:

"As already remarked, the doctrine of part-performance rests on the ground of fraud. The underlying principle is that where one of the contracting parties has been induced or allowed to alter his situation on the faith of an oral agreement within the statute, to such an extent that it would be a fraud on part of the other party to set up its invalidity, equity

will make the case an exception to the statute. After a party has been induced to make expenditures, or a change of situation, in regard to the subject-matter of the agreement, or upon the supposition that it was to be carried into execution, and the assumption of rights thereby to be acquired, so that the refusal to complete the execution of the agreement is not merely a denial of rights which it was intended to confer, but the infliction of an unjust and unconscientious injury and loss, in such case, the party is held, by force of his acts, or silent acquiescence, which have misled the other to his harm, to be estopped from setting up the statute."

This rule has been uniformly followed and applied ever since.

In Bennett v. Harrison, 115 Minn. 342, the court say at page 348, 132 N. W. 309:

"The courts have not attempted to define what extent or character of change in the situation induced by the oral agreement will be sufficient to estop the party inducing such change from questioning the validity of the oral promise. It must be a change of such character and to such an extent that the interposing of the defense of the statute would be a fraud. The mere denial of the right promised by the oral agreement, the loss of that which existed only by virtue of the oral promise, being deprived of the bargain, does not create an exceptional situation as to the statute, but the very situation the statute covers. To take a case out of the statute because of such resulting loss or injury annuls the statute. The injury or loss which would result from the enforcement of the statute must arise from the acts done in performance or in pursuance of the oral agreement, and such acts must so far alter the situation of the parties seeking to avoid the statute that it would be unjust and against conscience to allow the other party, who has permitted such change to take place in pursuance of his oral agreement, to thereafter refuse to perform on his part."

In Snow v. Snow, 98 Minn. 348, 108 N. W. 245, the son was operating a farm under a lease from his father which expired April 1, 1900. In October, 1899, the father promised to give him the farm. He repaired the fencing, did some additional plowing, got out some timber for buildings, and continued to operate the farm and receive the proceeds thereof until September, 1903, when he brought an action to enforce specific performance of the oral promise. The court say:

"There is absolutely no evidence of any of the conditions necessary to take the case out of the operation of the statute. Respondent has expended no money for the construction of buildings, and has made no improvements which he might not otherwise have made under the lease in force at the time of the alleged gift. He has not shown that he has done anything whatever to change his former relation to his father by reason of the gift except remaining in possession after the termination of the original term of lease and receiving the crops without division. Where a vendee relies upon possession and improvements sufficient to avoid the statute of frauds he must enter into possession of the land under and in reliance upon the contract and make valuable improvements thereon."

In Bresnahan v. Bresnahan, 71 Minn. 1, 73 N. W. 515, the father, who owned the homestead and who had deeded 120 acres to his son Cornelius, purchased 120 acres adjoining the homestead for his son Benjamin for $4,000. Benjamin furnished $800 and the father $1,000 toward the purchase price, and the remainder was paid out of the produce from the three farms owned respectively by Cornelius, Benjamin and the father. Later they purchased another 80-acre tract known as the Lynch 80, paid for it out of the produce from the three farms, and took the title in the name of Benjamin. Benjamin lived with his father upon the homestead from 1883 until his marriage in 1888. He farmed both his own land and the homestead; paid the family expenses from the proceeds, and used the remainder in paying for the land they had purchased. On the day before his marriage, Benjamin and his father made an agreement, whereby Benjamin promised to convey the Lynch 80 to Cornelius, and to farm the homestead and give the father one-third of all its products together with the use of the house and of a pasture for some stock, and the father promised that before his death he would convey the homestead to Benjamin. Benjamin conveyed the Lynch 80 to Cornelius but took the note of the latter for one-third of the original purchase price, with an indorsement that it was to be returned when he received title to the homestead. He farmed the homestead, kept it in good condition, and gave his father one-third of the crops therefrom, until the latter conveyed the homestead to a daughter some seven years later. The court held that the nature

and extent of the part performance were not sufficient to entitle Benjamin to enforce specific performance of the oral agreement.

In Townsend v. Fenton, reported in 30 Minn. 528, 16 N. W. 421, and (on a second appeal), in 32 Minn. 482, 21 N. W. 726, it is said that the payment of the purchase price and the rendering of services, if the value of such services can be ascertained with reasonable accuracy, are not sufficient to warrant a decree of specific performance.

In Thomas v. Rogers, 108 Minn. 132, 121 N. W. 630, 133 Am. St. 421, it is said: "The part performance must be substantial, and of such a nature that injustice will result if performance is not decreed."

In the present case, the part performance on the part of Richard consisted in selling his Wisconsin farm, in removing to the Money Creek farm, and in working thereon for his father for one year at an agreed compensation. The facts do not bring Richard within the class of cases in which specific performance is decreed on the ground that the vendee has taken possession of the land under the oral contract and has made valuable improvements thereon in reliance upon such contract, for Richard made no improvements upon the land for himself, and was never in possession of the land after the contract entitled him to such possession in his own right. Neither do the facts bring him within the class of cases in which specific performance is decreed because the vendee, in reliance upon the contract and without other consideration therefor, has relinquished or abandoned some valuable property right which cannot be restored to him, for Richard received full value for his Wisconsin farm. Neither do the facts bring him within the class of cases in which specific performance is decreed because the vendee has performed services of such character that the value thereof cannot be estimated with reasonable accuracy, for Richard did not reside with his parents and rendered no services to them of a personal nature, but merely performed ordinary farm work for an agreed compensation which has been paid him in full. The removal from Sparta to Houston county was not in itself of sufficient consequence to constitute a part performance.

The evidence taken as a whole fails to show that Richard has changed his situation in reliance upon the oral contract in such manner and to such extent that it would be either unconscionable or inequitable to

invoke the statute against him. It fails to bring him within the rule as announced and applied in Trebesch v. Trebesch, 130 Minn. 368, 153 N. W. 754. The only substantial loss that he will sustain by the enforcement of the statute is the loss of the gift promised him by his father, and this is not sufficient to avoid the statute. Bennett v. Harrison, supra. It follows that there has been no such part performance of the oral agreement as is required to take it out of the statute of frauds, and that the judgment appealed from must be reversed. It therefore becomes unnecessary to consider the other questions presented. Both judgments are reversed.